OPINION
In Case No. CA 17130, defendant-appellant Jack Kronenthal appeals from a default judgment rendered in favor of plaintiff-appellee B-Dry System, Inc. In Case No. CA 17619, Kronenthal appeals from the trial court's denial of his Motion for Relief from Judgment. The cases have been consolidated on appeal. Kronenthal argues that the trial court lacked jurisdiction to rule on the controversy between the parties, pursuant to the jurisdictional priority rule, because he had filed a similar action against B-Dry in the Greene County Common Pleas Court, and had obtained service of process on B-Dry with respect to that action before B-Dry had obtained service of process on him regarding the within action. In the alternative, Kronenthal argues that the trial court erred by entering a default judgment in B-Dry's favor without holding a damages hearing, as permitted under Civ.R. 55, and by overruling his Motion for Relief from Judgment.
We conclude that the trial court did not abuse its discretion by not holding a damages hearing as permitted under Civ.R. 55, nor by overruling Kronenthal's Motion for Relief from Judgment, because Kronenthal failed to establish that he was entitled to relief under any of the grounds listed in Civ.R. 60(B). However, we also conclude that the trial court may have lacked jurisdiction in this case pursuant to the jurisdictional priority rule, depending upon whether Kronenthal deliberately avoided service of process with respect to the Montgomery County action, as B-Dry asserts, and whether this evasion of service of process occurred prior to the time Kronenthal obtained service of process on B-Dry with respect to the Greene County action. Accordingly, in Case No. 17130, the trial court's default judgment is Reversed, and this cause is Remanded for proceedings consistent with this opinion. In Case No. 17619, the trial court's order overruling Kronenthal's Motion for Relief from Judgment is Affirmed.
 I
B-Dry System, Inc., is engaged in the business of waterproofing basements. The company owns certain patents, registered trademarks, service marks, trade names, and logos, and has developed what it refers to as "unique procedures and techniques for the operation of a basement waterproofing business, known as the `B-Dry System.'" In 1986, B-Dry entered into a License and Franchise Agreement with Kronenthal, which permitted him to operate a waterproofing business utilizing the B-Dry System and the B-Dry label. Disputes subsequently arose between the parties concerning their respective rights and duties under the franchise agreement. The parties entered into negotiations in the latter part of 1997 to resolve their differences, without success.
On January 6, 1998, B-Dry filed a Verified Complaint in the Montgomery County Common Pleas Court, alleging that Kronenthal had breached numerous provisions of the parties' License and Franchise Agreement. B-Dry sought declaratory and injunctive relief against Kronenthal, as well as attorney fees. On the same day it filed its Verified Complaint, B-Dry filed a Motion for Temporary Restraining Order and Preliminary Injunction, seeking, among other things, to prevent Kronenthal from using, in any manner, the B-Dry System, or B-Dry's trade names, trademarks, service marks, trade secrets, etc.
The trial court granted B-Dry's Motion for a Temporary Restraining Order on the same day it was filed, and scheduled a preliminary injunction hearing for January 14, 1998, which was subsequently continued until February 3, 1998.
Immediately prior to the filing of the Verified Complaint, B-Dry's counsel telephoned Kronenthal's attorney, and left a message informing him of B-Dry's intention to file suit against Kronenthal. Kronenthal's attorney returned the telephone call later that day, and informed B-Dry's counsel that he had left messages for Kronenthal informing him of B-Dry's intention to file suit, and of his own intention to terminate his representation of him because of professional differences. B-Dry's counsel then called Kronenthal directly, and left a message informing him about B-Dry's intention to file suit.
When Kronenthal returned the telephone call the next day, B-Dry's counsel informed him that a Verified Complaint had been filed against him, and that a temporary restraining order had been issued against him. Kronenthal allegedly responded by telling B-Dry's counsel that he was not bound by the temporary restraining order since he had neither seen it, nor been served with it. When B-Dry's counsel asked Kronenthal where he could be found so that he could be served, Kronenthal reportedly said, "If you can find me, you can serve me." When B-Dry's counsel offered to read the terms of the temporary restraining order over the telephone, Kronenthal allegedly reiterated that he had neither seen nor been served with the temporary restraining order, and, therefore, was not bound by it. Allegedly, Kronenthal then hung up the telephone abruptly.
Shortly after this conversation, B-Dry sent a letter to Kronenthal, enclosing copies of the temporary restraining order, summons, and complaint. That same day, B-Dry requested the court-appointed process server, Carl J. Vogel, Jr., to serve Kronenthal. Vogel tried to serve Kronenthal on four occasions, at different times of the day, from January 6, 1998 to January 14, 1998. All of Vogel's attempts to serve Kronenthal failed.
On January 8, 1998, B-Dry requested service of process through the Greene County Sheriff's Office. The Greene County Deputy Sheriffs tried to serve Kronenthal on seven occasions, from January 8, 1998 to January 13, 1998. All of the Greene County Deputy Sheriffs' attempts to serve Kronenthal failed.
On January 16, 1998, B-Dry requested service on Kronenthal through a privately-retained process server, Jeff Klitch. Beginning on January 17, 1998, Klitch tried to serve Kronenthal on approximately 20 occasions within a two-week period. All of Klitch's attempts to serve Kronenthal failed. Klitch reported that Kronenthal was present on more than half of the occasions, but simply refused to answer the door. On one occasion, Kronenthal allegedly called Klitch and said, "You ain't serving no fucking papers on me motherfucker!"
B-Dry had requested service of process on Kronenthal by certified mail on January 7, 1998. The certified mail service was returned unclaimed to the clerk's office on January 20, 1998. On January 26, 1998, B-Dry requested the clerk of courts to serve Kronenthal by regular mail. On February 2, 1998, the clerk of courts journalized the certificate of mailing in the record.
Kronenthal failed to appear at the scheduled preliminary injunction hearing, and a preliminary injunction was issued against him. Additionally, Kronenthal never filed an answer to B-Dry's Verified Complaint. Consequently, on March 3, 1998, B-Dry filed a Motion for Default Judgment and Permanent Injunctive Relief, submitting the affidavit of its counsel in support of its request for attorney fees. The trial court granted B-Dry's motion the same day, along with its request for attorney fees.
On March 30, 1998, Kronenthal, now represented by new counsel, filed a Motion for Relief From Judgment, requesting the trial court to set aside the default judgment that had been entered against him. In support of his motion, Kronenthal informed the trial court that he had filed a complaint against B-Dry and its owners, Joseph Bevilacqua and Joseph Garfinkel, in the Greene County Common Pleas Court, on January 26, 1998, and that he had obtained service of process on B-Dry and its owners, on January 29, 1998. Kronenthal asserted that under the jurisdictional priority rule, the Greene County Common Pleas Court had exclusive jurisdiction to rule on the controversy, because he had obtained service of process on B-Dry in that action before B-Dry obtained service of process on him with respect to its action filed in Montgomery County.
B-Dry responded to Kronenthal's motion by asserting, among other things, that Kronenthal had deliberately avoided service of process on numerous occasions in the Montgomery County action, and that he should not be rewarded for having done so. In support of its claim, B-Dry attached the affidavits of its counsel, Vogel, and Klitch, who cited Kronenthal's repeated attempts to evade service of process, as related above. Kronenthal countered by filing his own affidavit in which he denied that he had deliberately avoided service of process. The matter was referred to a magistrate.
In October, 1998, the magistrate issued a decision recommending that Kronenthal's Motion for Relief from Judgment be granted. Although the magistrate rejected Kronenthal's claims that he was entitled to relief under Civ.R. 60(B)(1) on the grounds of mistake or excusable neglect, the magistrate found that Kronenthal was entitled to relief under the "catch-all" provision of Civ.R. 60(B)(5), on the ground that under the jurisdictional priority rule, exclusive jurisdiction of the matter had vested in the Greene County Common Pleas Court. B-Dry filed objections to the magistrate's decision, and Kronenthal filed a response to B-Dry's objections.
In December, 1998, B-Dry notified the trial court that the Greene County Common Pleas Court had rendered summary judgment in favor of B-Dry and against Kronenthal, with respect to Kronenthal's Complaint. Kronenthal v. B-Dry Systems, Inc. (Dec. 23, 1998), Greene C.P. No. 98-CV-0041, unreported. In its decision, the Greene County Common Pleas Court held that it would not disturb the Montgomery County Common Pleas Court's finding that it had jurisdiction over the case. The court also concluded that Kronenthal's causes of action were barred under the doctrine of res judicata as a result of the March 3, 1998 default judgment that had been entered against him in the Montgomery County action.
In January, 1999, the trial court sustained B-Dry's objections to the magistrate's decision, and overruled Kronenthal's Motion for Relief from Judgment. Initially, the trial court opined that if it had been attempting to exercise jurisdiction at the same time as the Greene County Common Pleas Court, then the Greene County Common Pleas Court would have exclusive jurisdiction to rule on the matter, since service of process was perfected there first. Nevertheless, the trial court found that because the Greene County Common Pleas Court had exhausted its jurisdiction by rendering summary judgment in favor of B-Dry and against Kronenthal, concurrent jurisdiction no longer existed in the matter. Consequently, the trial court concluded that it was free to exercise jurisdiction to resolve B-Dry's objections to the magistrate's decision, and Kronenthal's Motion for Relief from Judgment.
The trial court agreed with the magistrate that Kronenthal had not established that he was entitled to relief under Civ.R. 60(B)(1) on grounds of mistake or excusable neglect. However, the trial court disagreed with the magistrate's recommendation that Kronenthal be granted relief pursuant to Civ.R. 60(B)(5) on the ground that exclusive jurisdiction of the matter had vested in the Greene County Common Pleas Court. Essentially, the trial court ruled that Kronenthal had waived that argument by not filing an answer or motion raising the lack of jurisdiction as an affirmative defense pursuant to Civ.R. 12.
Kronenthal appeals from the default judgment entered against him, as well as from the order overruling his Motion for Relief from Judgment.
 II
Kronenthal's First Assignment of Error in Case No. CA 17130 states:
 THE TRIAL COURT ERRED IN EXERCISING JURISDICTION OVER THE PARTIES OR THE CONTROVERSY AS JURISDICTION WAS PREVIOUSLY LODGED IN THE GREENE COUNTY COMMON PLEAS COURT.
"[A]s between courts of concurrent and coextensive jurisdiction, the one whose power is first invoked by the institution of proper proceedings and the service of the required process acquires the right to adjudicate upon the whole issue and to settle the rights of the parties to the exclusion of all other tribunals." Miller v. Court of Common Pleas (1944), 143 Ohio St. 68,70. (Citation omitted.) "When a court of competent jurisdiction acquires jurisdiction of the subject matter of an action, its authority continues until the matter is completely and finally disposed of, and no court of co-ordinate jurisdiction is at liberty to interfere with its proceedings." John Weenink Sons Co. v. Cuyahoga Cty. Court of Common Pleas (1948), 150 Ohio St. 349, paragraph three of the syllabus.
Generally, the jurisdictional priority rule operates only if the second action is between the same parties and involves the same claims or causes of action as the first. State ex rel.Sellers v. Gerken (1995), 72 Ohio St.3d 115, 117. However, the priority rule has also been applied where the causes of action and relief requested in the two lawsuits are not exactly the same.Id., citing as examples, State ex rel. Phillips v. Polcar (1977),50 Ohio St.2d 279 (actions for damages and recision arising from same realty purchase contract); and John Weenink Sons, supra
(actions for damages and declaratory judgment based on same fund derived from rodeo proceeds). Whether the claims or causes of action in both cases are sufficiently identical for the priority rule to apply is dependent upon whether "[e]ach of the actions comprises part of the `whole issue' that is within the exclusive jurisdiction of the court whose power is legally first invoked."State ex rel. Racing Guild of Ohio v. Morgan (1985), 17 Ohio St.3d 54,56. See, also, State ex rel. Sellers, supra. In determining whether the two cases concern the same "whole issue," courts consider whether "the ruling of the court subsequently acquiring jurisdiction may affect or interfere with the resolution of the issues before the court where suit was originally commenced." Michaels Bldg. Co. v. Cardinal Fed. S. L. Bank
(1988), 54 Ohio App.3d 180, 183.
Here, B-Dry filed its Verified Complaint in the Montgomery County Common Pleas Court on January 6, 1998, but did not obtain service of process on Kronenthal until February 2, 1998. By contrast, Kronenthal did not file his Complaint in the Greene County Common Pleas Court until January 26, 1998, but obtained service of process on B-Dry on January 29, 1998. The parties in both actions are the same. Furthermore, while the causes of action and relief requested in the lawsuits are not exactly the same, the issues raised by those claims and requested relief are sufficiently identical to require application of the priority rule.
For instance, in its Verified Complaint, B-Dry charged Kronenthal with breaching the franchise agreement by, among other things: (1) refusing to follow the B-Dry's System and other programs and methods in the operation of his franchise; (2) failing to disclose his sales records and financial statements; and (3) failing to indemnify it for all litigation expenses arising from a suit brought against B-Dry by one of Kronenthal's customers. Kronenthal alleges in his Complaint that, among other things, B-Dry: (1) failed to provide him with regular training as promised under the terms of the franchise agreement; (2) misrepresented the amount of sales and profits he could expect from obtaining the franchise; and (3) wrongfully entered into settlement agreements with two of his former customers.
In short, all of the causes of action presented in the parties' complaints relate in some way to the parties' rights and duties under their franchise agreement. It would be impractical to allow two different courts to rule separately on the parties' causes of action, which essentially present the same or similar issues, and which will involve interpretation of the same contractual provisions. To do so could create a situation where two different courts interpret the same contractual issues differently, and decide essentially the same questions differently. Accordingly, the causes of action presented by each of the parties' complaints comprise a part of the whole issue that is before each of the courts.
In light of the foregoing, it would appear that, pursuant to the jurisdictional priority rule, exclusive jurisdiction to rule on the controversy vested in the Greene County Common Pleas Court, rather than the Montgomery County Common Pleas Court. Nevertheless, B-Dry raises four arguments as to why the jurisdictional priority rule should not be applied in this case.
First, B-Dry maintains that by the time the trial court ruled on its objections to the magistrate's decision, the litigation in the Greene County Common Pleas Court had come to a conclusion; thus, B-Dry argues, concurrent jurisdiction no longer existed at that point, and the trial court was free to exercise jurisdiction in the matter. We disagree.
At the time the trial court entered default judgment against Kronenthal on March 3, 1998, the Montgomery and Greene County Common Pleas Courts were exercising concurrent jurisdiction over the controversy between the parties. Thus, pursuant to the jurisdictional priority rule, it appears that the Montgomery County Common Pleas Court did not have jurisdiction to rule on the controversy at the time it issued the default judgment.
Second, B-Dry asserts that Kronenthal's argument regarding the jurisdictional priority rule amounts to nothing more than an objection to the trial court's exercise of personal jurisdiction over him, and that Kronenthal waived that objection by not raising it in a timely manner, either by filing an answer to B-Dry's Verified Complaint or a Civ.R. 12(B)(2) motion. Again, we disagree.
B-Dry's purpose in characterizing Kronenthal's argument regarding the jurisdictional priority rule as an assertion that the trial court merely lacked personal jurisdiction over him is readily apparent. The defense of lack of personal jurisdiction is waived if it is not raised in a responsive pleading or in a motion filed prior to the answer. Franklin v. Franklin (1981), 5 Ohio App.3d 74,76. By contrast, the defense of lack of subject matter jurisdiction can never be waived. Time Warner AxS v. Pub. Util.Comm. (1996), 75 Ohio St.3d 229, 233. Objections based upon lack of subject matter jurisdiction may be raised at any stage of the proceedings, In re Byard (1996), 74 Ohio St.3d 294, 296, and may even be raised for the first time on appeal. Jenkins v. Keller
(1966), 6 Ohio St.2d 122, paragraph five of the syllabus. However, a party who asserts that a court lacks jurisdiction to rule on a controversy pursuant to the jurisdictional priority rule, is asserting more than just a lack of personal jurisdiction.
A court has jurisdiction to rule on a controversy between parties if it has obtained personal jurisdiction over the parties, and possesses subject matter jurisdiction over the parties' claims. A court obtains personal jurisdiction over a defendant by service of process, or by the defendant's voluntary appearance.Maryhew v. Yova (1984), 11 Ohio St.3d 154, 156. The "subject matter jurisdiction of a court is a court's power to hear and decide a case upon its merits[.]" Morrison v. Steiner (1972),32 Ohio St.2d 86, paragraph one of the syllabus. A court's subject matter jurisdiction is invoked by the filing of a complaint. SeeWilson v. Ohio Dept. of Rehab. Corr. (1991), 73 Ohio App.3d 496,499. Once a court of competent jurisdiction acquires jurisdiction over an action, its authority continues until the matter is completely and finally disposed of, and no court of co-ordinate jurisdiction may interfere with its proceedings. JohnWeenink Sons Co., supra.
In cases of concurrent jurisdiction, like the one before us, each court has obtained both subject matter jurisdiction over the parties' claims, and personal jurisdiction over the parties themselves; thus, both courts, standing alone, have obtained jurisdiction to rule on the controversy between the parties. The jurisdictional priority rule "breaks the tie" in these situations by vesting exclusive jurisdiction "to adjudicate upon the whole issue and to settle the rights of the parties" in the court that obtains service of process first. Miller, supra.
As a corollary to that rule, the remaining court is divested of jurisdiction to adjudicate upon the whole issue and to settle the rights of the parties. Miller, supra, and may not interfere with the proceedings in the first court. John Weenink Sons,supra. Furthermore, the action pending before that court is considered subject to dismissal for lack of subject matter jurisdiction. See State ex rel. Red Head, Inc. v. Holmes Cty.Court of Common Pleas (1997), 80 Ohio St.3d 149, 152 (upholding the denial of appellant's request for a writ of prohibition against trial judge who was about to exercise jurisdiction allegedly in violation of the jurisdictional priority rule, because, among other things, appellant had adequate legal remedies available to raise any claimed error by the trial judge regarding the jurisdictional priority rule, including the right to file a motion to dismiss for lack of subject matter jurisdiction, and the right to appeal any subsequent adverse ruling on the issue.) See, also, Red Head Brass, Inc. v. Action Coupling Equip., Inc. (Oct. 19, 1994), Wayne App. No. 2866, unreported. Thus, a party may object to a court's exercise of jurisdiction in violation of the jurisdictional priority rule at any stage of the proceedings.Byard, supra. Therefore, Kronenthal did not waive his right to object to the trial court's exercise of jurisdiction in this case.
Parenthetically, we renew our wish that the issue of which of two courts ought to proceed concerning the same subject matter were treated as an issue of jurisprudence, involving judicial economy, rather than an issue of subject-matter jurisdiction, involving judicial power. See Post v. Post (1990), 66 Ohio App.3d 765, involving the competing jurisdictions of a trial court and an appellate court in the same action. However, the settled rule is otherwise.
Third, B-Dry argues that it should not be penalized for the one-week delay by the Montgomery County Clerk of Courts Office in serving Kronenthal by regular mail with summons and a copy of its Verified Complaint. We find this argument unpersuasive, too. The one-week delay in issuing service by regular mail was not unreasonable, and in any event, was not attributable to Kronenthal.
Fourth, B-Dry argues that Kronenthal obtained service of process first in the Greene County action only because he deliberately avoided service of process in the Montgomery County action on numerous occasions. B-Dry asserts that a party should not be rewarded for evading service of process. Kronenthal responds to that argument by insisting that he did not attempt to evade service of process, and that he "has done everything possible to have his day in court, while B-Dry has continuously done whatever it takes to keep the merits out of court." Kronenthal concludes by asking, "What is B-Dry afraid of?"
Generally, "courts should strive to decide cases upon their merits rather than upon procedural grounds." See National Mut.Ins. Co. v. Papenhagen (1987), 30 Ohio St.3d 14, 15. Nevertheless, courts in this state have inherent authority, and even a responsibility, to protect the "integrity of the judicial process," see In re Mason (1996), 116 Ohio App.3d 451, 453-454, and to ensure the "efficient administration of justice." See Inre Reiner (1993), 63 Ohio Misc.2d 487, 489. To allow a party to avoid service of process deliberately, thereby controlling in which of two courts an action shall proceed, would undermine the integrity of the judicial process, and defeat the fair and efficient administration of justice; it would penalize B-Dry for its forthright acceptance of service of process, while rewarding Kronenthal for his evasion of service. Therefore, where the evidence demonstrates that a party has deliberately avoided service of process, that party should be deemed to have been constructively served, at least for purposes of the jurisdictional priority rule, at the time that he began evading service of process.
Here, B-Dry has presented substantial evidence that Kronenthal evaded service of process on numerous occasions prior to January 29, 1998 — the date on which Kronenthal obtained service of process on B-Dry in his Greene County action. Kronenthal, on the other hand, has presented his own affidavit refuting that evidence. The trial court never determined whether Kronenthal deliberately avoided service of process, choosing instead to decide the case on different grounds. The determination whether Kronenthal deliberately avoided service of process should be made, in the first instance, by the trial court. Accordingly, we Reverse the judgment of the trial court and Remand
this case for a factual determination with respect to that issue. The burden of proving that Kronenthal deliberately avoided service of process will rest with B-Dry, since it is the proponent of the assertion. If the trial court determines that Kronenthal deliberately avoided service of process, and the evasion took place prior to January 29, 1998, the trial court shall reinstate its default judgment. If the trial court concludes that Kronenthal did not deliberately avoid service of process, or that the evidence on the issue is in equipoise, then the trial court shall dismiss the matter for lack of subject-matter jurisdiction.
Kronenthal's First Assignment of Error in Case No. CA 17130 is sustained to the extent indicated.
 III
Kronenthal's Second Assignment of Error in Case No. CA 17130 states:
 THE TRIAL COURT ERRED IN GRANTING A DEFAULT JUDGMENT AGAINST THE DEFENDANT-APPELLANT.
Kronenthal argues that the default judgment entered by the trial court was invalid because no hearing was held on B-Dry's damages. We find this argument unpersuasive.
Civ.R. 55(A) provides in pertinent part:
 If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper * * *.
Here, B-Dry's motion for default judgment was accompanied by an affidavit submitted by B-Dry's counsel, certifying the number of hours B-Dry's counsel spent on the case, and his hourly rates. Therefore, a damages hearing was not necessary in this case, and the trial court did not abuse its discretion by not holding one.
B-Dry's Second Assignment of Error in Case No. CA 17130 is overruled.
 IV
Kronenthal's Third Assignment of Error in Case No. CA 17130, and single assignment of error in Case No. 17619, state, respectively:
 THE TRIAL COURT ERRED IN NOT GRANTING THE DEFENDANT-APPELLANT'S MOTION FOR RELIEF FROM JUDGMENT.
 THE TRIAL COURT ERRED WHEN IT SUSTAINED PLAINTIFF-APPELLEE'S OBJECTIONS TO THE MAGISTRATE'S DECISION WHEREIN THE MAGISTRATE GRANTED DEFENDANT-APPELLANT'S MOTION FOR RELIEF FROM JUDGMENT.
In order to prevail on a Civ.R. 60(B) motion for relief from judgment, a party must demonstrate that: (1) he has a meritorious claim to bring should relief be granted; (2) he is qualified to obtain relief under at least one of the five provisions contained in Civ.R. 60(B)(1)-(5); and (3) he has presented his motion in a timely manner. GTE Automatic Electric, Inc. v. Arc Industries,Inc. (1976), 47 Ohio St.2d 146, 150. Here, both sides agree that Kronenthal has established the first and third of these elements; the question is whether Kronenthal qualifies for relief under any of the grounds set forth in Civ.R. 60(B)(1)-(5).
Kronenthal contends that he is entitled to relief on grounds of mistake or excusable neglect pursuant to Civ.R. 60(B)(1). Kronenthal also argues, as the magistrate found, that he was entitled to relief from the default judgment because the Greene County Common Pleas Court had exclusive jurisdiction over the controversy by operation of the jurisdictional priority rule. However, all of these arguments have essentially been rendered moot by our disposition of Kronenthal's First Assignment of Error in Case No. CA 17130. Pursuant to our disposition of that assignment of error, the trial court will determine whether Kronenthal deliberately avoided service of process. If the trial court determines that he did not, the trial court must dismiss the case for lack of subject-matter jurisdiction.
If the trial court determines that Kronenthal did
deliberately avoid service of process prior to January 29, 1998, then the trial court's default judgment will be reinstated. Furthermore, Kronenthal will not be entitled to relief on grounds of mistake or excusable neglect if he is found to have deliberately avoided service of process. A person should not be relieved from a default judgment because he is mistaken about the consequences of taking deliberate steps to avoid service of process; no reasonable person would make that kind of mistake, and the law should not relieve any person who does, from the consequences of their action. Furthermore, a person who deliberately avoids service of process has shown a disregard for the judicial system and the rights of the opposing party, and, therefore, is not entitled to relief from a default judgment on grounds of excusable neglect. See Griffey v. Rajan (1987),33 Ohio St.3d 75, 80.
Finally, we reject Kronenthal's contention that the trial court should have granted him relief from the default judgment because Montgomery County was an improper venue for the action pursuant to Civ.R. 3(B). If an action has been improperly venued, the party prejudiced thereby is free to assert that defense in a timely fashion by way of a Civ.R. 12(B)(3) motion. Civ.R. 3(B). If the party fails to do so, he waives that defense. Civ.R. 12(H)(1). Since the Civil Rules provide defendants with a remedy to cure defects in the plaintiff's choice of venue, a claim of improper venue cannot serve as a ground for relief from judgment under Civ.R. 60(B).
In light of the foregoing, Kronenthal's Third Assignment of Error in Case No. CA 17130, and sole assignment of error in Case No. CA 17169 are moot, and, therefore, we need not decide them. See App.R. 12(A)(1)(c). To the extent they are not moot, they are overruled.
 V
In Case No. CA 17130, Kronenthal's Second Assignment of Error having been overruled, and his Third Assignment of Error in Case No. CA 17130 having been overruled to the extent it has not been rendered moot, but his First Assignment of Error having been sustained to the extent indicated, the judgment of the trial court is Reversed, and this cause is Remanded for proceedings consistent with this opinion. In Case No. CA 17619, Kronenthal's assignment of error having been overruled to the extent it has not been made moot by our ruling in Case No. CA 17130, the judgment of the trial court is Affirmed.
GRADY, P.J., and YOUNG, J., concur.
Copies mailed to:
Mary L. Wiseman
David E. Beitzel
Hon. Dennis Langer