OPINION
Defendant-Appellant Anthem Insurance Company, Inc. ("Anthem") is appealing the Darke County Common Pleas Court's denial of its Rule 60(B) motion for relief from judgment.
On December 23, 1999, Plaintiff-Appellees Marjorie J. Beasecker and Walter M. Beasecker (collectively "the Beaseckers") filed a complaint for personal injuries resulting from an automobile accident which had occurred on December 25, 1997. The complaint named various defendants, including Darrell E. Sizemore, the tortfeasor, and Anthem, the claim administrator for the benefit plan. The seventh claim in the complaint stated that Anthem "may have paid" medical expenses on behalf of the Beaseckers in connection with their injuries, thus Anthem was joined in the action to defend and protect its claims for subrogation or reimbursement. Anthem was served with a copy of the complaint by certified mail on January 4, 2000. Anthem failed to respond, and as a result, the Beaseckers filed a motion for default judgment against Anthem on March 6, 2000, which the trial court granted that same day.
Anthem filed a motion for relief from judgment on July 17, 2000. Anthem asserted that on January 13, 2000, Kim Shelton, a Subrogation Investigator for Anthem, had mailed a copy of the Beaseckers' file with the complaint to Anthem's attorney's offices. On March 1, 2000, Shelton followed up with the attorneys and discovered that they had not received the file. Shelton immediately mailed a second copy of the file to the attorneys. Anthem argued in its motion for relief from judgment that it was entitled to relief from the default judgment based upon excusable neglect and/or inadvertence, as the U.S. mail had never delivered the file to the attorneys. Additionally, Anthem argued that the judgment against it was void, as the trial court had no subject matter jurisdiction because under the Employee Retirement Income Security Act ("ERISA"), the right of reimbursement falls under the exclusive jurisdiction of federal court pursuant to 29 U.S.C. § 1132(a) and (e)(1). The Beaseckers responded to Anthem's motion, arguing that Anthem's actions did not constitute excusable neglect, and that state courts have concurrent jurisdiction with federal courts to hear these types of civil actions under ERISA.
The trial court overruled Anthem's motion on September 5, 2000, finding that Anthem had not established excusable neglect. The trial court focused upon Anthem's knowledge of the pending litigation through Shelton, and Anthem's failure to explain why no action had been taken before the date the answer should have been filed. Additionally, the trial court found that Anthem had failed to demonstrate any "excusable neglect" in its delay in responding to the default judgment. The trial court failed to address the jurisdictional issue. Anthem now appeals the trial court's decision, raising two assignments of error.
 I. The trial court erred as a matter of law in denying defendant, Anthem Ins. Co.'s ("Anthem") motion for relief from judgment under Civ.R. 60(B).
Anthem asserts that it satisfied all of the elements under Civ.R. 60(B), and thus the trial court abused its discretion by overruling its motion for relief from judgment.
It is within the trial court's discretion to decide whether or not to grant a party's Civ.R. 60(B) motion to set aside a judgment. Rose Chevrolet, Inc. v. Adams (1988), 36 Ohio St.3d 17, 20. Thus, absent a clear showing of an abuse of discretion, a trial court's decision granting or denying a Civ.R. 60(B) motion will not be disturbed on appeal. GTE Automatic Electric, Inc. v. ARC Industries (1976),47 Ohio St.2d 146, 148, 1 O.O.3d 86, 87. Civ.R. 60(B) reads as follows:
 On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); * * * The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken.
A party bringing a motion under Civ.R. 60(B) may prevail only upon demonstrating the following three requirements: (1) a meritorious defense or claim to present if relief is granted; (2) entitlement to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) timeliness of the motion. GTE Automatic Electric, Inc., supra, paragraph two of the syllabus, 1 O.O.3d at paragraph two of the syllabus. If the motion is timely filed and the party has a meritorious defense, "doubt, if any, should be resolved in favor of the motion to set aside the judgment so that cases may be decided on their merits." Id., at paragraph three of the syllabus, 1 O.O.3d at paragraph three of the syllabus.
In this case, Anthem's Civ.R. 60(B) motion was timely, as it was filed within a year from the trial court's default judgment entry. There also is no doubt that Anthem has a meritorious claim of subrogation. The question remains whether Anthem met the second prong of the GTE test, specifically whether its neglect in the matter was excusable within the meaning of Civ.R. 60(B)(2).
The interpretation of "excusable neglect" must be performed in keeping with the proposition that Civ.R. 60(B)(1) is a remedial rule to be liberally construed. See Colley v. Bazell (1980), 64 Ohio St.2d 243,248, 18 O.O.3d 442, 445; Doddridge v. Fitzpatrick (1978), 53 Ohio St.2d 9,12, 7 O.O.3d 5, 7. See, also, Wheeler v. Denny's, Inc. (Mar. 11, 1993), Montgomery App. No. 13517, unreported. There is no bright-line test to determine whether a party's neglect was excusable or inexcusable, but instead the analysis will turn on the facts and circumstances presented in each case. Colley, supra, at 249, 18 O.O.3d at 446. Furthermore, inexcusable neglect does not necessarily mean that the party's disregard is intentional. Griffey v. Rajan (1987), 33 Ohio St.3d 75, 79. However, the greater the degree of willfulness of the movant, the less likely his conduct will be characterized as "excusable neglect." Mid-America Acceptance Co. v. Lightle (1989), 63 Ohio App.3d 590.
In this case, the trial court found that Anthem's neglect was inexcusable:
 It is clear that the subrogation investigator knew of the pending litigation from January 4, 2000 and thereafter. In spite of attempts to forward the claim file to counsel, there has been no explanation as to why no action was taken before the date that an Answer should have been filed (actions which may have included contacting Plaintiff's counsel and seeking additional time or providing Anthem's attorney with similar information so that its attorneys could make a similar call). Further, and more glaringly, there has been no demonstration of any excusable neglect regarding the failure of Anthem [I]nsurance Company to seek relief from the Judgment from the date of Default Judgment (March 6, 2000) through the date of Defendant's motion for relief (July 17, 2000). Anthem has acknowledged receipt of the motion for default judgment but not explained its failure to act upon the motion until over four months later.
(Doc. No. 40, p. 2) Anthem argues that it did not ignore the complaint or motion for default judgment, but that it relied upon the U.S. Mail to timely deliver the file to its attorneys, and the failure of the delivery constituted excusable neglect. In response, the Beaseckers rely on the Ohio Supreme Court's decisions in Griffey, supra, and Colley, supra, and argue that Anthem's failure to follow up with counsel constituted inexcusable neglect for failing to see if any action had been taken on its behalf.
In Colley, the Ohio Supreme Court found that the trial court had abused its discretion by failing to vacate the default judgment based upon excusable neglect. The defendant, an attorney, was served with a complaint which he had "promptly and responsibly" forwarded to his insurance agent within two days. The insurance agent sent the complaint four days later to the defendant's insurance carrier broker, who had mailed the complaint to the insurance carrier nine days later. A delay in the postal service caused the complaint to reach the insurance carrier nineteen days after it had been sent, but on that day the trial court granted the default judgment. The Ohio Supreme Court found that the defendant's inaction "had not ripened to the point where it could be labeled as a `complete disregard for the judicial system'" under GTE, supra. Colley, supra, at 248, 18 O.O.3d at 445.
In contrast, the court in Griffey found that the defendant had not proven excusable neglect. The defendant received the complaint and left a message with his insurance carrier. The defendant failed to follow up when no one from the insurance carrier's office returned his call. As a result, no answer was filed. Fifty-one days after the complaint was filed, a default judgment was entered in plaintiff's favor. The court did not agree with the defendant's argument that his duty was discharged upon notifying the insurance company of the lawsuit. The court focused upon the defendant's inaction over time, and found that the neglect in that case "goes well beyond that in Colley." Id. at 79. The court reiterated the caution it had made in Colley:
 [E]ven though a defendant has promptly notified an insurance company of the filing of the lawsuit, his neglect in failing to independently determine whether an answer has been filed on his behalf may well change from "excusable" to "inexcusable" upon the passage of time, without regard to the one year provision regulating the timeliness of the motion.
(Emphasis added in Griffey.) Griffey, supra, at 79, quoting Colley, supra, at 249, 18 O.O.3d at 446. Focusing on the "breakdown in routine channels of communication," the Ohio Supreme Court found that the insurance carrier's "failure to make any response on behalf of [the defendant] constituted inexcusable neglect," and found that the defendant had "exhibited a disregard for the judicial system and the rights of the plaintiff." Griffey, supra, at 79-80.
We find the facts in this case to be similar to those in Colley and distinguishable from those in Griffey. Anthem received the complaint on January 4, 2000, and promptly and responsibly mailed out a copy of the complaint and the file to its attorney's offices on January 13, 2000. We do not find Anthem's reliance on the U.S. mail to be an exhibition of disregard for the judicial system. There was no reason for Anthem to believe that the mail would be unreliable and that the file would not arrive at Anthem's attorney's office. Moreover, upon realizing that the file had not been delivered to the attorney's office, Anthem promptly and responsibly acted and sent out another file that day.
Although Anthem might have been neglectful by not corresponding with its attorneys to see if they had received the file and filed an answer, we find that the trial court abused its discretion in determining that such neglect had been "inexcusable." We fail to see how Anthem's actions were willful, or how it showed disregard for the trial court's rules or for the rights and interests of the other parties. Accordingly, we conclude that the trial court abused its discretion in denying Anthem's motion for relief from judgment. Anthem's first assignment of error is sustained.
 II. The trial court erred in granting a default judgment against Anthem as to its reimbursment {sic} rights, because ERISA confers exclusive subject matter jurisdiction on the federal courts to enforce terms of a qualified benefit plan, i.e., the right to reimbursement; thus, the trial court had no jurisdiction to enter a judgment as to Anthem's reimbursement rights against plaintiffs.
Anthem contends that the right of subrogation and the right to reimbursement are not benefits due to the plaintiffs or other beneficiaries under the terms of the plan, but instead are rights held by Anthem as the plan administrator. For these reasons, Anthem argues that any potential right to recovery falls within ERISA and is within the exclusive jurisdiction of federal courts pursuant to29 U.S.C. § 1132(a) and § 1132(e)(1).
Under 29 U.S.C. § 1132(a)(1)(B), a civil action may be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" The jurisdiction of such actions is governed by 29 U.S.C. § 1132(e)(1), which states:
 Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section.
In determining if state and federal courts have concurrent jurisdiction in matters such as these, we find persuasive the Twelfth District's decision in Bradburn v. Merman (Oct. 25, 1999), Clermont App. No. CA99-02-011, unreported. In Bradburn, the participants requested that the trial court enforce their rights under the plan. Appellant, who was the participant's employer, was brought into the suit for subrogation and reimbursement purposes. The participants filed for a declaratory judgment regarding the rights and obligations of the parties under the employee benefit plan. Appellant filed a motion to dismiss, arguing that the state court lacked jurisdiction over the declaratory action because federal courts had exclusive jurisdiction under ERISA. The trial court overruled the motion to dismiss. On appeal, the Twelfth District found that the trial court had concurrent jurisdiction under the exception found in29 U.S.C. § 1132(e)(1). The court based this conclusion upon the nature of the plaintiffs' claim, a request by plan participants for the court to enforce their rights under the terms of the plan, which fell under 29 U.S.C. § 1132(a)(1)(B), and the fact that no one had disputed that the plan fell within the coverage of ERISA.
In addition, appellants argued that even if the trial court had jurisdiction, ERISA preempted all state law related to self-funded employee benefits plans, and therefore the unambiguous language of the plan should have been followed. The Bradburn court noted that "[a] state law claim is preempted by ERISA if the claim is for the recovery of an ERISA plan benefit." Id., citing Leasher v. Leggett Platt, Inc. (1994), 96 Ohio App.3d 367, 372. However, the court concluded that the issue in the case was not preempted by ERISA but instead was governed by state law. The court stated,
 [T]his court has previously held in Leasher that when the issue is whether an employee benefit plan gives the employer rights of subrogation and first reimbursement in funds received by a plan participant from a third-party tortfeasor, ERISA does not preempt Ohio's state law.
Id., citing Leasher, supra, at 373. Finding that to be the central dispute in the case, the Bradburn court held that state law, not ERISA, governed the case.
We find the Bradburn case directly on point with the issues in this case. Under Bradburn, ERISA does apply to this matter because this case deals with a request by plan participants, the Beaseckers, to enforce their rights under the plan. By definition, this case falls under the exception contained in 29 U.S.C. § 1132(a)(1)(B), and thus state courts have concurrent jurisdiction with federal courts under29 U.S.C. § 1132(e)(1). Moreover, the issue of Anthem's right to subrogate or its right to reimbursement is an issue that is governed by Ohio law, and is not preempted by ERISA. See, generally, Bradburn, supra, and Leasher, supra.
Accordingly, Anthem's second assignment of error is overruled.
Judgment of the trial court is reversed in part, affirmed in part, and remanded for proceedings consistent with this opinion.
WOLFF, P.J. and BROGAN, J., concur.