GRIFFEY, APPELLEE, *v.* RAJAN, APPELLANT.

[Cite as Griffey *v.* Rajan (1987), 33 Ohio St. 3d 75.]

(No. 86-1917—Decided November 10, 1987.)

*Inscore, Rinehardt, Whitney & Enderle, Larry L. Inscore* and *Michael L. Inscore,* for appellee.

Jacobson, Maynard, Tuschman & Kalur Co., L.P.A., Matthew Moriarty, Janis L. Small, Brown, Bemiller, Murray & McIntyre and William Travis McIntyre, for appellant.

HERBERT R. BROWN, J. A motion for relief from judgment under Civ. R. 60(B) is addressed to the sound discretion of the trial court, and that court's ruling will not be disturbed on appeal absent a showing of abuse of discretion. See, e.g., Moore v. Emmanuel Family Training Ctr. (1985), 18 Ohio St. 3d 64, 66, 18 OBR 96, 98, 479 N.E. 2d 879, 882; Colley v. Bazell (1980), 64 Ohio St. 2d 243, 18 O.O. 3d 442, 416 N.E. 2d 605; Doddridge v. Fitzpatrick (1978), 53 Ohio St. 2d 9, 11, 7 O.O. 3d 5, 6, 371 N.E. 2d 214, 216; GTE Automatic Electric v. ARC Industries (1976), 47 Ohio St. 2d 146, 1 O.O. 3d 86, 351 N.E. 2d 113. With that narrow standard of review in mind, this case requires us to resolve the following issues: (1) whether the conduct of P.I.E. is imputable to appellant; (2) whether the conduct of appellant and/or P.I.E. amounted to inexcusable neglect; and (3) whether appellee committed misrepresentation by failing to disclose her receipt of workers' compensation benefits to the trial court? For the following reasons, we affirm the judgment of the court of appeals.

I

In GTE, supra, we held that "the neglect of a party's attorney will be imputed to the party for purposes of Civ. R. 60(B)(1)." Id. at paragraph four of the syllabus. In GTE, the defendant was served with a complaint, which it turned over to its attorney. The attorney failed to plead or otherwise defend, and, thirty-four days after service, a default judgment was taken. The trial court granted the defendant's subsequent Civ. R. 60(B)(1) motion for relief from the judgment, finding that the neglect of the attorney was not imputable to the defendant. We disagreed, adopting the reasoning espoused by the United States Supreme Court in Link v. Wabash RR. Co. (1962), 370 U.S. 626, 633-634 and 634, fn. 10:

" 'There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent * * *.

" '* * * [K]eeping this suit alive merely because * * * [defendant] should not be penalized for the omissions of his own attorney would be visiting the sins of * * * [defendant's] lawyer upon the * * * [plaintiff].' " (Emphasis added.) GTE, supra, at 152, 1 O.O. 3d at 89-90, 351 N.E. 2d at 117. See, also, Moore, supra, at 68, 18 OBR at 99-100, 479 N.E. 2d at 883-884; Argo Plastic Products Co. v. Cleveland (1984), 15 Ohio St. 3d 389, 15 OBR 505, 474 N.E. 2d 328, syllabus.

We believe the GTE rule should apply to the cause sub judice. Appellant chose P.I.E. as his malpractice insurance carrier and notified it of the lawsuit pending against him, with the understanding that P.I.E. would provide him with a defense to that suit. Appellee should not be made to suffer for P.I.E.'s neglect, when it was appellant who contracted with P.I.E. and brought P.I.E. into the case.

Appellant contends that he should not be responsible for P.I.E.'s neglect because P.I.E. was not his agent. Appellant reasons that no agency existed

here because he had no *right of control* over P.I.E. See *Ross* v. *Burgan* (1955), 163 Ohio St. 211, 219, 56 O.O. 218, 221, 126 N.E. 2d 592, 596, 50 A.L.R. 2d 1275, 1280. While appellant's argument has a superficial appeal, we resist the temptation to let our determination of whether P.I.E.'s neglect is imputable to appellant rest upon a mechanical labeling of the relationship between an insurer and its insured.[2]

Although the courts are divided on the issue, there is a wealth of authority from outside Ohio supporting the imputation of an insurance company's neglect in defending a lawsuit to its insured. See, *e.g., Stevens* v. *Gulf Oil Corp.* (1971), 108 R.I. 209, 274 A. 2d 163; *Stevens* v. *Childers* (1952), 236 N.C. 348, 72 S.E. 2d 849; *Leslie* v. *Spencer* (1935), 170 Okla. 642, 42 P. 2d 119; *Chmielewski* v. *Marich* (1954), 2 Ill. 2d 568, 119 N.E. 2d 247, 42 A.L.R. 2d 1023. In *Ward* v. *Cook United, Inc.* (Mo. App. 1975), 521 S.W. 2d 461, 473, the court persuasively reasoned:

"Reason and logic render impossible the acceptance of any real distinction between the inexcusable neglect of a lawyer (held in Missouri to be imputable to his client) and the inexcusable neglect of a claims manager and attorney for the defendant's insurer. Both occupy a contractual rela-

tionship with the client, the prime purpose of which is to handle the litigation within the framework of judicial proceedings. But even of more significant force is that by undertaking such responsibilities they also assume an obligation to third parties interested in the matter and to the courts administering and judicially determining the controversy."

We agree. Therefore, we hold that for purposes of a Civ. R. 60(B)(1) motion for relief from a default judgment on the grounds of excusable neglect, the neglect of a defendant's insurance company in failing to file an answer or other responsive pleading to a complaint against defendant is imputable to the defendant.

## II

Because we hold that an insurance company's neglect in failing to file an answer or other responsive pleading is imputable to its insured, it follows that the conduct of the insurance company and the conduct of the insured must be examined *together* to determine whether excusable or inexcusable neglect has occurred. See *GTE, supra,* at 153, 1 O.O. 3d at 90, 351 N.E. 2d at 117.

We make this examination in light of our holding in *Colley* v. *Bazell,*

---

[2] See *Maxman* v. *Farmers Ins. Exchange* (1978), 85 Mich. App. 115, 122, 270 N.W. 2d 534, 536, fn. 3, wherein the court states:

" * * * On balance, we believe that the courts have resorted to calling this relationship agency almost by default. There is no other term in the law which can accurately describe the relationship. Because there is a void in this area, courts have resorted to calling the relationship agency and have applied agency rules."

See, also, 7C Appleman, Insurance Law and Practice (1979) 6, Section 4681, wherein the author states:

"It was * * * early stated that an insurer which elected to exercise its right to conduct the defense was not regarded as being an agent of the insured, but was rather in the position of an independent contractor. But the more modern rule is that under such a policy provision the insurer becomes the agent of the insured."

The author cautions, however, that:

" * * * [T]he relationship is more complex than will fit precisely into one of the neat niches of the law, partaking in part of an agency relationship, in part of that of an independent contractor, in many respects that of a fiduciary." *Id.* at 6, fn. 16.

*supra.* In *Colley,* the defendant, an attorney, was served with a complaint which he forwarded to his insurance agent within two days. Four days later, the insurance agent sent the complaint to the broker for the defendant's insurance carrier, who mailed the complaint to the carrier within nine more days. Apparently due to a delay in the mails, the complaint did not reach the insurance carrier until nineteen days after it was sent — on the same day that a default judgment was taken against the defendant. The trial court overruled the defendant's Civ. R. 60(B)(1) motion, holding that the defendant should have independently taken steps to ensure that a responsive pleading was filed *by the answer day.* We disagreed, and stated:

"In our view, the concept of 'excusable neglect' must be construed in keeping with the proposition that Civ. R. 60(B)(1) is a remedial rule to be liberally construed, while bearing in mind that Civ. R. 60(B) constitutes an attempt to 'strike a proper balance between the conflicting principles that litigation must be brought to an end and justice should be done.' 11 Wright & Miller, Federal Practice & Procedure 140, Section 2851, quoted in *Doddridge* v. *Fitzpatrick* (1978), 53 Ohio St. 2d 9, 12. We note that the default judgment was granted *within a week* of the defendant's failure to file a timely answer or a responsive pleading. *Under these circumstances,* the inaction of the defendant had not ripened to the point where it could be labeled as a 'complete disregard for the judicial system' as condemned in *GTE Automatic Electric, supra,* at page 153." (Emphasis added.) *Id.* at 248, 18 O.O. 3d at 445, 416 N.E. 2d at 609.

In *Colley* we held that the determination of whether excusable or inexcusable neglect had occurred "must of necessity take into consideration all the surrounding facts and circumstances." *Id.* at 249, 18 O.O. 3d at 445, 416 N.E. 2d at 609. Although we are committed to the principle that Ohio courts should strive to decide cases upon their merits rather than upon procedural grounds, see, *e.g., National Mut. Ins. Co.* v. *Papenhagen* (1987), 30 Ohio St. 3d 14, 30 OBR 21, 505 N.E. 2d 980, and *DeHart* v. *Aetna Life Ins. Co.* (1982), 69 Ohio St. 2d 189, 23 O.O. 3d 210, 431 N.E. 2d 644, we refuse to let Civ. R. 60(B) serve as an emasculation of the pleading rules and time limits. The neglect in this case goes well beyond that in *Colley.*

In the case *sub judice,* fully fifty-one days passed between the answer day and the day appellee moved for a default judgment. Appellant's attempt to exonerate *himself* by claiming his duty was discharged upon notifying P.I.E. of the lawsuit against him is thwarted by *Colley, supra,* wherein we cautioned that "even though a defendant has promptly notified an insurance company of the filing of the lawsuit, *his neglect in failing to independently determine whether an answer has been filed on his behalf may well change from 'excusable' to 'inexcusable' upon the passage of time,* without regard to the one year provision regulating the timeliness of the motion." (Emphasis added.) *Id.* at 249, 18 O.O. 3d at 446, 416 N.E. 2d at 609, fn. 4.

Appellant further argues that *P.I.E.'s* failure to respond to appellee's complaint was due to a "breakdown in routine channels of communication." Such wordage is more an admission of neglect than an excuse for it. A carrier who contracts to provide a defense should equip itself to file a responsive pleading when notified of a suit which falls within its coverage. We are not prepared to say that the trial court abused its discretion in finding that

P.I.E.'s failure to make *any* response on behalf of appellant constituted inexcusable neglect. A disregard for the judicial system and the right of appellee does not necessarily mean an *intentional* disregard.[3]

Accordingly, we hold that a trial court does not abuse its discretion in overruling a Civ. R. 60(B)(1) motion for relief from a default judgment, on the grounds of excusable neglect, if it is evident from all of the facts and circumstances in the case that the conduct of the defendant, combined with the conduct of those persons whose conduct is imputable to the defendant, exhibited a disregard for the judicial system and the rights of the plaintiff.

### III

We now turn to an examination of whether appellee committed misrepresentation of her recoverable damages by failing to disclose her receipt of workers' compensation benefits to the trial court.

Appellee concedes that she failed to disclose her receipt of workers' compensation benefits, but claims that such failure did not amount to misrepresentation because (1) it is an "open question" whether workers' compensation benefits constitute "other collateral recovery," under R.C. 2305.27, and (2) the constitutionality of R.C. 2305.27 and 2307.42 is unclear.[4] We agree that no misrepresentation occurred.

In *Simon* v. *St. Elizabeth Medical Center* (C.P. 1976), 3 O.O. 3d 164, 355 N.E. 2d 903, and *Graley* v. *Satayatham* (C.P. 1975), 74 O.O. 2d 316, 343 N.E. 2d 832, the Courts of Common Pleas for Montgomery and Cuyahoga Counties, held that (1) R.C. 2307.42 is invalid under Section 5(B), Article IV of the Ohio Constitution because it conflicts with the Ohio Rules of Civil Procedure, and (2) R.C. 2305.27 and 2307.42 are invalid as violative of the Equal Protection Clause, except as applied to claims against the state of Ohio. However, in *Holaday* v. *Bethesda Hosp.* (1986), 29 Ohio App. 3d 347, 29 OBR 475, 505 N.E. 2d 1003, the Court of Appeals for Hamilton County, faced with a different type of equal protection argument, held that "R.C. 2305.27 represents a rational response by the General Assembly to a

---

[3] We emphasize that the cause *sub judice* is between appellant and appellee, not between appellant and P.I.E. Therefore, we express no opinion as to where, as between appellant and P.I.E., the fault lies.

[4] R.C. 2307.42 provided, in part:

"Any complaint or other pleading which sets forth a medical claim, as defined in division (D) of section 2305.11 of the Revised Code, shall contain the following:

" * * *

"(B) *A listing of all benefits of any kind paid or payable to the claimant from any source* other than the claimant's own assets or assets of the claimant's immediate family as a result of the incident or occurrence forming the basis of the medical claim." (Emphasis added.)

In a similar vein, R.C. 2305.27 states, in part:

"Except as provided in section 2743.02 of the Revised Code, in any medical claim, as defined in division (D) of section 2305.11 of the Revised Code, an award of damages shall not be reduced by insurance proceeds or payments or other benefits paid under any insurance policy or contract where the premium or cost of such insurance policy or contract was paid either by or for the person who has obtained the award, or by his employer, or both, or by direct payments from his employer, *but shall be reduced by any other collateral recovery* for medical and hospital care, custodial care or rehabilitation services, and loss of earned income. * * *." (Emphasis added.)

compelling state interest in the malpractice crisis and is therefore constitutional." *Id.* at 349, 29 OBR at 478, 505 N.E. 2d 1006.

The constitutional issues and the question of whether workers' compensation benefits constitute "other collateral recovery" under R.C. 2305.27 are not properly before us. Suffice it to say that the questionable status of R.C. 2305.27 and 2307.42,[5] as evidenced by the decisions of the lower Ohio courts, mandates the conclusion that appellee did not misrepresent her recoverable damages.

For the foregoing reasons, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

SWEENEY and DOUGLAS, JJ., concur.

MOYER, C.J., concurs in the syllabus and judgment only.

LOCHER and WRIGHT, JJ., dissent with opinion.

HOLMES, J., dissents.

WRIGHT, J., dissenting. I dissent from today's majority opinion for two reasons. First, it deviates from the longstanding philosophy of this court favoring trials on the merits over default judgments. Second, it takes the relationship between an insurer and its insured out of the realm of contract law and into the area of agency law.

I

In *Svoboda* v. *Brunswick* (1983), 6 Ohio St. 3d 348, 351, 6 OBR 403, 406,

453 N.E. 2d 648, 651, this court succinctly summed up what it has stated many times before:

"The primary objective and function of our courts is to adjudicate cases on the merits by applying substantive law whenever possible, and not to adjudicate cases with finality upon a strained construction of procedural law yielding unjust results."

This court has repeatedly held that Civ. R. 60(B) "is a remedial rule and should be liberally construed." *Blasco* v. *Mislik* (1982), 69 Ohio St. 2d 684, 685, 23 O.O. 3d 551, 552, 433 N.E. 2d 612, 613; *Colley* v. *Bazell* (1980), 64 Ohio St. 2d 243, 248, 18 O.O. 3d 442, 445, 416 N.E. 2d 605, 609. In addition, we also have held that when there is any question whether or not a default judgment should be set aside, any doubt should be resolved in favor of the movant. *GTE Automatic Electric* v. *ARC Industries* (1976), 47 Ohio St. 2d 146, 151, 1 O.O. 3d 86, 89, 351 N.E. 2d 113, 116.

The criteria that must be met in order to vacate a judgment under Civ. R. 60(B) were set out by this court in *GTE* at paragraph two of the syllabus:

"To prevail on a motion brought under Civ. R. 60(B), the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ. R. 60(B)(1) through (5); and (3), the motion is made within a reasonable time, and, where the grounds of relief are Civ. R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken."

The parties in this cause agreed that the first and third elements of this rule were met. The remaining question is whether the appellant is entitled to relief under Civ. R. 60(B). This rule states in pertinent part:

[5] R.C. 2307.42 has been amended; the new provisions took effect on October 20, 1987.

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or *excusable neglect*; * * *." (Emphasis added.)

## II

The gravamen of this case is whether the action or inaction of the appellant constitutes "excusable neglect." Contrary to the language of the majority opinion, action or inaction of appellant's insurer most certainly should *not* be examined in determining whether *appellant's* conduct is excusable, as is discussed *infra*.

This court addressed precisely this issue in *Colley* where we held that a party's reliance on his insurance company to defend a lawsuit can constitute excusable neglect. In *Colley,* a legal malpractice complaint was filed against attorney Bazell, who forwarded a personal letter noting that he had been sued to his insurance agent. For unexplained reasons, this notice did not arrive at the offices of his professional liability carrier until the date a default judgment in the amount of $75,000 had been awarded against him. Bazell sought to vacate the default on the grounds of excusable neglect. This court agreed that the judgment should be vacated, stating in paragraph two of the syllabus:

"Where a defendant, upon being served with a summons in a cause of action based on a claim for which he has liability insurance, relies upon his carrier to defend the lawsuit, his failure to file an answer or to determine independently that his carrier has failed to file timely an answer which leads to the taking of a default judgment, may constitute 'excusable neglect,' depending on the facts and circumstances of the case, so as to

justify relief from the default judgment pursuant to Civ. R. 60(B)."

Of particular significance in the instant case, the *Colley* court held: "Generally, a default judgment is vacated upon motion where a defaulting party has notified his insurer of the commencement of the suit and has relied, to his detriment, on its undertaking to defend." *Id.* at 247, 18 O.O. 3d at 445, 416 N.E. 2d at 608. That is exactly what happened here. There is undisputed evidence that Dr. Rajan notified his insurer of the suit and relied on his insurer to defend him.

Despite arguments to the contrary, the case at bar is indistinguishable from *Colley.* The fact that Bazell's notification was made by certified mail makes it no more or less reliable than the phone call by Dr. Rajan's secretary. In fact, authority cited by this court in *Colley* supports the contention that notification by telephone is appropriate. In *Dalton* v. *Alexander* (1956), 10 Ill. App. 2d 273, 135 N.E. 2d 101, which was cited by the *Colley* court to support the general rule set forth in the paragraph above, a party telephoned his insurance company to report an accident in which he had been involved. After the phone call, the insurance company failed to adequately defend the insured. The trial court rendered a default judgment against the insured and refused to allow a motion to vacate the judgment. The appellate court reversed, stating:

"* * * We do not think that the unexplained failure of the Insurance Company to take care of the matter as they were [*sic*] required to do should be charged against * * * [the defendant] as inexcusable neglect. At least there would appear to be a reasonable doubt as to whether this defendant was guilty of excusable neglect. In such a case and where as here there has been no trial on the merits the court's discre-

tion is usually exercised in favor of granting the motion and permitting the defendant to answer." *Id.* at 288, 135 N.E. 2d at 108.

Inquiry into whether neglect is excusable or inexcusable "must of necessity take into consideration all the surrounding facts and circumstances." *Colley* at 249, 18 O.O. 3d at 445, 416 N.E. 2d at 609. Among the facts and circumstances to be considered are (1) whether the defendant promptly notified his carrier of the litigation; (2) the lapse of time between the last day for filing of a timely answer and the granting of a default judgment; (3) the amount of the judgment granted; and (4) the experience and understanding of the defendant with respect to litigation matters. *Id.* at 249, 18 O.O. 3d at 445-446, 416 N.E. 2d at 609.

## A

There is no doubt that Dr. Rajan promptly notified his carrier of the litigation in an appropriate manner. In fact, the appellee concedes that the appellant acted appropriately in this regard. Dr. Rajan told his secretary to call his liability insurer, notify it of the litigation, and comply with any instructions it gave her concerning the lawsuit. His secretary made the telephone call and told an employee of the insurance company the name of the patient bringing the suit, the name of the law firm representing the patient, and gave other pertinent information. The insurer, however, apparently did nothing further in defense of the lawsuit despite its contractual duty to do so. Consequently, a default judgment was rendered against Dr. Rajan in a case in which he relied upon his malpractice insurance carrier to defend him.

## B

Much has been made of the fact that fifty-one days elapsed between the time an answer was to be filed by the appellant and the default judgment was rendered. Although this is one of the factors to be considered in determining excusable neglect, a fifty-one-day period was not an unreasonable amount of time in the instant case. Dr. Rajan believed that his professional liability carrier was taking care of the matter. He had no reason to know that the appellee's complaint had not been answered by his insurance company. It was not until Dr. Rajan received notification from his own attorney that he had any idea that a default judgment had been rendered against him.

In *Colley,* this court held that even a lawyer, one who knows the importance of filing a timely answer, did not act irresponsibly when he did not independently audit the conduct of his carrier. Such inaction hardly ripens to the point where it could be labeled as a " 'complete disregard for the judicial system,' " as condemned in *GTE. Colley* at 248, 18 O.O. 3d at 445, 416 N.E. 2d at 609. In fact, Dr. Rajan showed high regard for the judicial system. He notified his insurer of the litigation as soon as he became aware of it, as well as immediately contacting his carrier when he learned that a default judgment had been rendered against him.

## C

The most disturbing aspect of this case is the size of the default judgment award—$115,000, plus costs. An award of this magnitude, which is literally handed to the plaintiff without a trial on the merits, only reinforces the philosophy that Civ. R. 60(B) is a remedial rule that should be liberally construed to encourage trials on their merits.

In *Colley,* a $75,000 award was determined to be so large that it should not be decided by default judgment. As

this court stated in footnote 5 of that case, citing *Tozer* v. *Charles A. Krause Milling Co.* (C.A. 3, 1951), 189 F. 2d 242, 245:

" 'What is excusable neglect and what is inexcusable neglect can hardly be determined in a vacuum. The opinion of the court below does not reveal what standard was applied nor what factors were weighed. The recent cases applying Rule 60(b) have uniformly held that it must be given a liberal construction. *Matters involving large sums should not be determined by default judgments if it can reasonably be avoided.*' (Emphasis added.)" *Colley* at 249, 18 O.O. 3d at 446, 416 N.E. 2d at 609.

Generally, medical malpractice claims are "[m]atters involving large sums." Undoubtedly, an award of $115,000, plus costs, falls within that category.

The General Assembly, in enacting R.C. 2307.42, recognized the inherent unfairness of default judgments in medical malpractice cases. This statute[6] stated, in pertinent part:

"When a medical claim is filed in the court to recover damages the party against whom the action is brought may at any time request a statement setting forth the nature and amount of damages being sought. * * * If no request is made for such a statement setting forth the nature and amount of damages being sought *the plaintiff shall give notice to the defendant of the amount of special and general damages sought to be recovered before a default may be taken* * * *." (Emphasis added.)

The appellee failed to comply with this statute. No statement setting forth the nature and amount of damages being sought by the plaintiff

was received by either Dr. Rajan or his insurer before the default judgment was rendered.

Such noncompliance with the notice requirements of R.C. 2307.42 further emphasizes that the granting of a default judgment in the instant case was improper and should be vacated.

### D

The final factor to be examined in determining whether neglect is excusable or not is the experience and understanding of the defendant with respect to litigation matters.

No evidence was presented that indicated Dr. Rajan had any experience or understanding of litigation matters. In addition, his secretary, who initially received the legal papers and subsequently talked with the physician's liability carrier, testified that she had no personal or prior experience with lawsuits.

Much was made in oral argument of the fact that Dr. Rajan is an "educated man." What we must not forget, however, is that he is a man educated in the intricacies of medicine, not law. Just as most lawyers would not know the first thing about performing an appendectomy, most physicians are not familiar with default judgments and motions to vacate. As a result, these physicians should be able to rely on their professional liability carriers, who they rightfully expect will defend them.

### E

Taking into consideration all the facts and circumstances presented to the trial court in connection with the motion for relief from judgment, and

---

[6] This statute was in effect at the time this lawsuit was filed. Am. Sub. H.B. No. 327, effective October 20, 1987, amends R.C. 2307.42 and other sections under Title 23 of the Revised Code.

applying the principle that doubt, if any, should be resolved in favor of the movant, I conclude that the trial court abused its discretion in failing to vacate the default judgment.

### III

The trial court also erred in finding that P.I.E. Mutual Insurance Company was an agent of the appellant and that the negligence of the insurance company in failing to answer the complaint should be imputed to the appellant.

Such a finding stands foursquare against established principles of agency and contract law:

"It is a long-standing principle of law that an insurance policy is a contract, and that the relationship between the insurer and the insured is purely contractual in nature." *Nationwide Mut. Ins. Co.* v. *Marsh* (1984), 15 Ohio St. 3d 107, 109, 15 OBR 261, 262, 472 N.E. 2d 1061, 1062; *Ohio Farmers Ins. Co.* v. *Cochran* (1922), 104 Ohio St. 427, 135 N.E. 537.

A valid contract involves competent parties, a lawful subject matter, a sufficient consideration, and an actual agreement to do or forebear from doing some particular thing. *Local Tel. Co.* v. *Mutual Tel. Co.* (1921), 102 Ohio St. 524, 530, 133 N.E. 527, 529. All of these elements were met in the instant case.

An agency relationship can be distinguished from one that is purely contractual in nature by the fact that an agent has the power to bind the principal and the principal has the right to control the agent. In fact, the principal's right to control the conduct of his agent is the most important element in determining whether an agency relationship exists. *Priess* v. *Fisherfolk* (S.D. Ohio 1982), 535 F. Supp. 1271.

In an insurer-insured relationship, neither party has the right to control the other. Since the essential element of control does not exist, the insurer cannot be the agent of the insured. See, *e.g., Kirchnen* v. *Orth* (E.D. Wis. 1975), 390 F. Supp. 313 (insurer cannot be agent of insured for purposes of settlement negotiations because insured has no right of control over insurer). Therefore, the negligence of P.I.E. Mutual cannot be imputed to the appellant because P.I.E. Mutual is not the appellant's servant or agent.

This reasoning is consistent with the *Colley* decision. In that case, the court did not consider the insurance company to be an agent of the insured. If it had, it would have been necessary for the court to examine the conduct of the insurer to see if its conduct was also excusable. The *Colley* court did not undertake this analysis. Instead, it held that where an insured acts promptly and responsibly, he has no duty to follow up with his insurance carrier to make sure that an answer is timely filed. The majority, however, fails to recognize the consequence of this precedent.

The majority erroneously asserts that "the GTE rule should apply to the cause *sub judice.*" GTE, however, involved the application of agency principles to a lawyer-client relationship, not an insurer-insured relationship. It is axiomatic that agency principles apply to lawyer-client relationships. It is equally well-settled that "the relationship between insurer and insured is purely contractual in nature." See *Nationwide, supra.* As such, it is clear that GTE is inapplicable to the facts in the instant case. Instead, the more recent case of *Colley* should be followed as controlling precedent.

### IV

Today's majority opinion will work to the detriment of every person in

Ohio who carries insurance — which, in modern society, means just about every person who drives a car, owns a home, or works at a job. Inevitably, every person who carries insurance, at some point or another, reports an accident, incident, or lawsuit to his or her insurance company. Insurance companies, as most corporate entities, are subject to clerical mistakes and communications problems. In a situation where an insured has promptly notified an insurer of a pending lawsuit, it seems unfair to penalize the insured because the insurer has suffered an internal bureaucratic breakdown.

Under today's majority opinion, every person who reports a lawsuit to his insurance company should, as the principal, independently check on the insurance company to make sure that the company meets legal deadlines in defending the suit. Failure to do so could result in a default judgment against the insured — as was unjustly demonstrated in the instant case. An extension of agency principles to the insurer-insured relationship, as championed by the majority, will only continue to lead to this offensive and unprincipled result.

Accordingly, and for all the foregoing reasons, I dissent.

LOCHER, J., concurs in the foregoing dissenting opinion.