DECISION AND JUDGMENT ENTRY
This appeal comes to us from a judgment issued by the Lucas County Court of Common Pleas, Domestic Relations Division, denying appellant's Civ.R. 60(B) request for relief from judgment. Because we conclude that the trial court did not abuse its discretion, we affirm.
In July 1997, appellant, Amie Najarian and appellee, Charles Kreutz, were granted a divorce. The parties' property was divided pursuant to an agreed settlement. Against the advice of her counsel, appellant acknowledged in open court her acceptance of the settlement agreement in which appellee received the bulk of the marital assets. Those assets were real estate, stocks, retirement accounts and other property, including the couple's pizza restaurant business which was not valued. Appellant received her own retirement accounts and $5,000 in cash.
After the divorce, appellant and appellee continued to have amicable contact with each other. Appellee bought appellant a $24,000 Jeep vehicle and transferred ownership of one of the rental homes to her. Appellant would often work in the pizza restaurant without pay.
In December, 1997, appellant became upset when she arrived at appellee's residence at the same time as his former high school girlfriend. Subsequently, appellant wanted appellee to reopen the settlement agreement as to the marital property; appellee refused.
In July 1998, appellant moved the trial court to vacate the divorce decree pursuant to Civ.R. 60(B). Appellant based her motion upon allegations that, due to depression and duress resulting from death threats made by appellee at the time of the divorce, she was emotionally unstable and unable to make appropriate judgments. Appellant also argued that the agreement was grossly inequitable on its face and it should be set aside.
The following evidence and testimony was presented at the Civ.R. 60(B)hearing. Appellant admitted that she and appellee had not disclosed all of their assets to the court at the time of the final hearing. Appellant said that she and appellee had skimmed money over the years from the pizza business. She claimed that this money had originally been kept in bank safe deposit boxes, but was brought home when appellee feared an audit. The parties allegedly counted and banded the money. They then sealed it in plastic bags, which were then put into five gallon buckets with lids. Some of the buckets were put in the crawl space of the home and some were buried in the yard. According to appellant, there was at least $1,000,000 in cash.
Appellant stated that the couple also failed to disclose gold, platinum and silver bullion, as well as investment grade coins — all had been purchased with cash. Appellant said that she had not disclosed these assets because she feared appellee would kill her if she did. According to appellant, appellee threatened her by saying that he knew people that would "take care of her" for $100. She also stated that she feared disclosing the existence of the money because it would cause her to be in trouble with the Internal Revenue Service ("IRS").[1]
Appellant further acknowledged that, prior to the final hearing, she took the hidden gold and platinum bullion.
Appellant testified that for many years she had suffered from and was treated for depression. She said that, during the divorce proceedings, her condition worsened and she took medication that may have made her confused.
Appellant stated that she never told her psychiatrist or her divorce attorney about appellee's threats or the hidden assets. At the time of the final hearing, she said she was frightened, but had become stronger since the divorce and was now able to confront him. She also admitted being upset by encountering the girlfriend, but denied the legal action was motivated by a desire for revenge against appellee. Appellant also stated that she had reported the facts to the IRS and "made a deal" regarding the alleged skimmed money. She denied, however, that the report was made in retaliation for appellee's failure to renegotiate the settlement with her.
Appellant's mother and a female cousin also testified. The mother said that she understood that the couple had money or other valuables in the home, but was unaware of the value. She also testified that appellant had told her about appellee's death threats and other intimidating behavior. Appellant's mother said that during the divorce, her daughter was sleep deprived and depressed. In her opinion, her daughter was unable to exercise competent, independent judgment.
The cousin stated that appellant looked physically ill, with bags under her eyes and complaints of body aches and insomnia. The cousin described appellant as emotionally unstable during the week of the final divorce hearing. The cousin also related that the couple used cash for most transactions and that, when she worked at the pizza business, she witnessed the parties skimming money from the gross profits.
The deposition of appellant's psychiatrist, Dr. George R. Williams, was admitted by stipulation. Dr. Williams testified that he had been treating appellant since 1993 for major depression. After she began taking prescribed antidepressants, Dr. Williams stated that appellant's depression improved. When appellee asked appellant for a divorce in September 1995, the doctor observed appellant's depression worsening. Nevertheless, the week before the final hearing, appellant told her doctor that she was feeling better and that the parties had come to an agreement. She stated to Dr. Williams that the money did not matter and that her "heart comes first." Dr. Williams said that appellant did not disclose to him the full value of the assets or the specific agreement terms. The doctor also stated that appellant had never told him that appellee verbally abused her or had ever threatened to kill her. Appellant also never disclosed any information about the hidden assets. The doctor expressed surprise that appellant had not told him about the alleged ill treatment by appellee. Given the new information regarding the amounts of the assets being given up and the alleged threats, he opined that appellant's ability to make sound judgments would have been significantly influenced.
The parties stipulated that the pizza business was worth between $600,000 and $1,500,000. Appellee admitted that some assets had not been disclosed to the court at the time of the divorce proceedings. He acknowledged that the parties' had skimmed some money from the business over the years, but denied that he had a million dollars hidden in buckets in the crawl space or buried elsewhere. Appellee also denied threatening or intimidating appellant. He did, however, acknowledge giving appellant the vehicle and real estate after the divorce.
The trial court ultimately denied the motion to vacate, essentially determining that appellant had not presented sufficient evidence to establish one of the criteria required under Civ.R. 60(B). The trial court found that appellant was not mentally incompetent, that she understood the nature of the agreement and that she knew of all the hidden assets but failed to disclose them. The court further determined that the evidence presented as to appellee's alleged death threats and intimidation was too vague and uncertain as to time and proximity to the divorce proceedings to establish that appellant was unduly influenced as to the settlement agreement.
Appellant now appeals that judgment, setting forth the following two assignments of error:
 "I. IT WAS ERROR FOR THE TRIAL COURT TO DENY PLAINTIFF/APPELLANT'S MOTION FROM RELIEF FROM JUDGMENT PURSUANT TO RULE 60(B)(3).
 "II. IT WAS ERROR FOR THE TRIAL COURT TO DENY PLAINTIFF/APPELLANT RELIEF FROM JUDGMENT PURSUANT TO RULE 60(B)(5)."
We will address appellant's two assignments of error together.
It is well-settled that in order to prevail on a motion for relief from judgment pursuant to Civ.R. 60(B), the movant must demonstrate: (1) a meritorious claim or defense if relief is granted, (2) entitlement to the relief under one of the grounds stated in Civ.R. 60(B)(1) through (5), and (3) timeliness of the motion. GTE Automatic Elec., Inc. v. ARCIndustries, Inc. (1976), 47 Ohio St.2d 146, paragraph two of the syllabus. The decision to grant or deny a motion for relief from judgment is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. Griffey v. Rajan (1987),33 Ohio St.3d 75, 77. An abuse of discretion connotes more than an error of law or of judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
In this case, appellant filed her motion within the one year time limit and set forth a potentially meritorious claim. Thus, the only real issue in dispute is whether or not the evidence presented established one of the grounds required for relief pursuant to Civ.R. 60(B).
Civ.R. 60(B)(3) and (5) set forth the following grounds for relief from judgment:
 "(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; * * * or (5) any other reason justifying relief from the judgment."
Where the parties to a divorce or separation enter into settlement through an agreed judgment entry, the law of contract applies. Dubinskyv. Dubinsky (Mar. 9, 1995), Cuyahoga App. No. 66439, 66440, unreported. Contracts, including settlement agreements, do not have to be fair and equitable to be binding and enforceable, so long as they are not procured by fraud, duress, overreaching or undue influence. Walther v. Walther
(1995), 102 Ohio App.3d 378, 383. See, also, Mack v. Polson Rubber Co. (1984), 14 Ohio St.3d 34. A separation agreement has been found to be unenforceable where a wife was afraid because of her husband's continuous threats to humiliate and kill her. See Young v. Young (1982),8 Ohio App.3d 52. In Walther, however, the court noted that:
 "Neither a change of heart nor poor legal advice is a ground to set aside a settlement agreement. A party may not unilaterally repudiate a binding settlement agreement." Walther, supra, at 383; citing to Spercel v. Sterling Industries, Inc. (1972), 31 Ohio St.2d 36.
Our review of the record in this case reveals that appellant has fallen short of proving that she was unduly influenced or fraudulently induced to sign the settlement agreement so as to meet the requirement for Civ.R. 60(B)(3). Although the evidence shows that she may have been suffering from depression and may have been motivated by the desire to end the proceedings, we cannot say that she was so overwhelmed or depressed that it prevented her understanding the nature of what she was doing. The doctor stated that the medication she was taking would not have caused any confusion, but rather would have improved her condition. Despite the alleged stress, she was well aware of the hidden assets, the potential for profit from the business, and was given several opportunities to renegotiate the terms of the agreement.
Likewise, we cannot say that the record shows that appellant acted under duress in response to appellee's alleged threats and intimidation. While we do not dismiss the possibility that such threats may have occurred, the evidence was simply insufficient to show that such actions presently influenced appellant or that she had no other choice but to sign the agreement. Therefore, we cannot say that the trial court's determination as to the fraud or duress claims was an abuse of its discretion.
As to the Civ.R. 60(B)(5) argument, appellant contends that the judgment should be vacated because the agreement was inequitable on its face. The record, however, strongly supports the fact that appellant signed the agreement to relieve the stress caused by the divorce proceedings and to end an unhappy marriage. Later, especially after the appearance of appellee's former girlfriend, appellant had a change of heart and decided that she had made a mistake.
Nevertheless, nothing in the record shows that appellant did not voluntarily enter into the settlement at the time of the final hearing in July 1997. While appellee may have acquired the bulk of the assets under the terms of the agreement, inequity alone in a settlement agreement is not automatic grounds for relief under Civ.R 60(B)(5). Parties agree to settle in divorce cases based on a variety of reasons, sometimes unknown even to their counsel. In fact, the evidence shows that, at the time of the final hearing, appellant made the decision to forfeit money and assets in order to preserve "her heart." Therefore, we cannot say that the trial court abused its discretion in denying appellant's motion for relief from judgment.
Accordingly, appellant's two assignments of error are not well-taken.
The judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is affirmed. Court costs of this appeal are assessed to appellant.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
James R. Sherck, J., Peter M. Handwork, J. and Melvin L. Resnick, J. CONCUR.
[1] Appellant, at the Civ.R. 60(B) hearing, announced that she was not seeking any interest in the money "skimmed" from the pizza operation and not disclosed in the divorce. Rather, appellant seeks a redistribution of the assets which the court already decided.