OPINION
Nick and Nancy Dailey appeal from the judgment of the Miami County Common Pleas Court denying their motion for relief from judgment filed pursuant to Civ.R. 60(B)(1) and (5).
On May 10, 2001, Vantage Homes, Inc. filed their complaint in the Miami County Common Pleas Court alleging that it had entered into a contract with the Daileys to build a home for them. Vantage claimed that the Daileys moved to their new home without paying the balance of $14,600 due on a Construction Disbursement Agreement. Vantage also sought on two separate causes of action $1000 as an additional remedy under the Agreement as well as $50 per day for each day of occupancy in violation of the Agreement.
Vantage attempted certified mail service upon the Daileys but Nick Dailey did not claim his certified mail. On June 20, 2001, Vantage's counsel instructed the Clerk to serve the Daileys by ordinary mail. The clerk filed his certificate of mailing on June 21, 2001.
On July 20, 2001, one day after the Daileys' answers were due, Vantage moved for and obtained judgment for the amount prayed for in the complaint. On July 24, 2001, the Daileys' answered and counterclaimed asserting claims for violation of the Consumer Sales Practices Act, Deceptive Trade Practices Act, and breach of contract.
The Daileys claimed that Vantage had failed to construct their home in a timely manner causing them financial injury and that they failed to perform their contract in a competent and workmanlike manner.
On September 19, 2001, the Daileys moved to vacate the default judgment pursuant to Civ.R. 60(B)(1). In support of the motion, Daileys' counsel filed his affidavit in which they asserted the following:
 2. In May 2001, I was notified by my clients that Plaintiff's herein had filed a lawsuit against them in the Miami County Municipal Court. At that time, I notified Jonathon Zweizig that I represented Defendants and asked that a copy of the Municipal Court Complaint be sent to me. I also informed Mr. Zweizig of the claims which my clients possessed against Vantage Homes. A copy of his letter of May 7, 2001 forwarding the Complaint to me is attached. Based upon the nature of Defendants' claims, Mr. Zweizig indicated his intent to transfer the matter to Common Pleas Court. Subsequently, Plaintiff dismissed the Municipal Court action.
 3. Thereafter, Plaintiff refiled this action in this Court. I contacted Mr. Zweizig again and asked that he forward a copy of the Common Pleas Complaint to my attention. A copy of Mr. Zweizig's June 12, 2001 letter is attached hereto.
 4. Thereafter, Plaintiff did obtain service of process on Defendants by ordinary mail on June 21, 2001. Based on that service date, I calculated the Defendants' answer date as July 19, 2001 and noted the deadline on my calendar. I did prepare an Answer and Counterclaims for filing with the Court. I also personally prepared the envelopes to the Court and Mr. Zweizig and assembled the various copies of the Answer and Counterclaim for filing on July 19th.
 5. I have recently recalculated the answer date and note that, in fact, the appropriate answer date was July 18, 2001. I do not know how I initially miscalculated the answer date. I can only assume I simply miscounted the number of days. However, the error was mine and was completely unintentional. I endeavor to make all such calculations so as to avoid the type of error I obviously made herein.
 6. At no time after June 12, 2001 did Mr. Zweizig contact me regarding my intent to answer or my continued representation of Defendants. At no time did I represent or indicate in any manner to Mr. Zweizig that I was no longer representing the Daileys in this case or their claims against Plaintiff. Mr. Zweizig did not provide me with a copy of his Motion for Default Judgment filed with the Court on July 20, 2001.
 7. At no time did I ignore the Complaint. Upon its service on my clients, I calculated the answer date, calendared the answer date and timely prepared an answer and counterclaim.
 On August 15, 2001, Vantage moved to strike the Daileys' answer and counterclaim as untimely.
On October 3, 2001, Vantage filed its memorandum contra the Daileys' motion. Attached to the motion was counsel's affidavit which reads as follows:
 3. That affiant represents counsel for Plaintiff, Vantage Homes, Inc., in regard to the above captioned litigation;
 4. That affiant forwarded a courtesy copy of the Complaint in the instant litigation to Attorney Andrew Engel via facsimile based upon prior contact with defense counsel;
 5. That affiant received notification that the certified mail service of the Complaint had been returned unclaimed and that, as a result of said notification, affiant contacted defense counsel to inquire as to the status of Defendants' Answer;
 6. That affiant was informed by defense counsel at that time that no Answer had been filed with the Court as service had not yet been properly perfected upon the Defendants and that the Complaint previously faxed to defense counsel failed to provide the exhibits to the Complaint;
 7. That affiant refaxed a courtesy copy of the Complaint to defense counsel based upon the aforementioned telephone conversation and requested defense counsel to contact his office so that an appropriate Answer date could be scheduled;
 8. That affiant had no further contact with defense counsel following the telephone conversation of June 12, 2001 until after the submission of the Motion for Default Judgment;
 9. That affiant did not receive a response to the letter of June 12, 2001, and was forced to perfect service upon the Defendants via regular mail.
In denying the Daileys' motion, the trial court stated the following in pertinent part:
 The number of days in which the Defendants were late in serving and filing the answer and counterclaim is not the only consideration. All of the cases look to the circumstances surrounding why the answer was untimely, including the conduct of the parties and their attorneys and whether a judgment has been entered.
 The fact that Plaintiff's counsel was repeatedly proactive in attempting to accomplish service informally and obtain an agreement as to an answer date from Counsel of the Defendants with no cooperation from defense counsel, significantly undermines the Defendants' entitlement to equity in their favor when the answer date is missed. Defense Counsel has a right to be uncooperative in regards to insisting on proper service, and has a right to be unresponsive to what would appear to be reasonable requests to accept informal service and reach an agreement to an answer date, but under these circumstances, such course of conduct does not invoke much sympathy from anyone when the answer date is missed.
 The Defendant has the right to have service perfected perfectly. On the other hand, Plaintiff has an equally important right to have its complaint answered within 28 days from service. This scenario places the Defendant in an unenviable position where they wish to hold the opposing side to the precise letter of the law, then seek leave to be excused from it due to their Counsel's neglect at the expense of the Plaintiff.
* * *
 All cases mandate that in determining whether neglect was excusable or inexcusable, the court must take into consideration all the surrounding facts and circumstances. The potential damage which may be inflicted upon a defendant who has failed to timely file an answer is devastating. In comparison, the delay caused by the late filing seldom results in substantial prejudice against the Plaintiff.
 A balancing the equities test has never been adopted by any Ohio court on this issue. It would be far too forgiving to errant defendants. Moreover, when courts enforce the procedural rules equally to all parties, the process protects the integrity of the judicial system.
* * *
 In making its required determinations the Court finds that (1) The Plaintiff has been prejudiced by the Defendants' failure to file a timely answer because judgment has already been entered. The motion for leave to file the answer and counterclaim was filed after the default judgment had been entered. Jenkins v. Clark, supra. (2). It is not excusable neglect that the attorney miscalculated the answer time or waited until the last minute to prepare and file the same when the Plaintiff repeatedly attempted to accomplish service informally and reach an informal agreement as to an acceptable answer date.
To prevail upon a motion brought under Civ.R. 60(B), the movant must demonstrate that (1) the party has a meritorious defense or claim to present if relief is granted, (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5), and (3) the motion is made within a reasonable time. GTE Automatic Electric v. ARCIndustries (1976), 47 Ohio St.2d 146. Civ.R. 60(B)(1) permits the court to relieve a party from a final judgment for mistake, inadvertence, or excusable neglect.
Where timely relief is sought from a default judgment and the movant has a meritorious defense, doubt, if any, should be in favor of the motion so that cases may be decided on their merit. GTE AutomaticElectric v. ARC Industries, supra, at syllabus 3. The neglect of a party's attorney will be imputed to the party for purposes of Civ.R. 60(B)(1). Id., at syllabus 4.
In GTE Automatic Electric v. ARC Industries, supra, the Ohio Supreme Court upheld the court of appeals determination that the trial court abused its discretion in granting the defendant Civ.R. 60(B) relief where the defendant ignored a debtor's exam after judgment and waited three months until the plaintiff obtained an attachment order on the defendant's bank account before the defendant sought relief under the rule. The Supreme Court held that the neglect of the defendant's counsel revealed a complete disregard for the judicial system and the rights of the appellee, and was not excusable neglect.
In Colley v. Bazell (1980), 64 Ohio St.2d 243, the Ohio Supreme Court held that where a defendant, upon being served with a summons in a cause of action based on a claim for which he has liability insurance, relies upon his carrier to defend the lawsuit, his failure to file an answer or to determine that his carrier has failed to file an answer leading to a default judgment, may constitute "excusable neglect" depending on the facts and the circumstances of the case, so as to justify relief pursuant to Civ.R. 60(B). The court stated the following:
 In our view, the concept of "excusable neglect" must be construed in keeping with the proposition that Civ.R. 60(B)(1) is a remedial rule to be liberally construed, while bearing in mind that Civ.R. 60(B) constitutes an attempt to "strike a proper balance between the conflicting principles that litigation must be brought to an end and justice should be done." 11 Wright Miller, Federal Practice Procedure 140, Section 2851, quoted in Doddridge v. Fitzpatrick
(1978), 53 Ohio St.2d 9, 12. We note that the default judgment was granted within a week of the defendant's failure to file a timely answer or a responsive pleading. Under these circumstances, the inaction of the defendant had not ripened to the point where it could be labeled as a "complete disregard for the judicial system" as condemned in GTE Automatic Electric, supra, at page 153.
 Assuming, arguendo, that the defendant's failure to check, by the date the default judgment was granted, on the question of whether his carrier had filed an answer or a similar responsive pleading constituted neglect, the next inquiry is whether that neglect was excusable or inexcusable. That inquiry must of necessity take into consideration all the surrounding facts and circumstances. Among such circumstances is whether the defendant promptly notified his carrier of the litigation. A second circumstance is the lapse of time between the last day for the filing of a timely answer and the granting of the default judgment. A third circumstance is the amount of the judgment granted. A fourth, but not decisive, circumstance is the experience and understanding of the defendant with respect to litigation matters.
 In refusing to vacate the default judgment, the trial court focused on the fact that the defendant is an attorney and ignored the fact of the defendant's prompt notice to the carrier, the substantial amount of the judgment, and the short passage of time between the failure to timely file an answer and the granting of the default judgment. Taking into consideration all the facts and circumstances presented to the trial court in connection with the motion for relief from judgment, and applying the principle that doubt, if any, should be resolved in favor of the motion to vacate, GTE Automatic Electric, supra, at page 151, 7 Moore's Federal Practice, supra, at pages 232-233, Paragraph 60.19, we conclude that the trial court abused its discretion in failing to vacate the default judgment.
In Griffey v. Rajan (1987), 33 Ohio St.3d 75, the Ohio Supreme Court again reiterated that a trial court does not abuse its discretion in overruling a Civ.R. 60(B)(1) motion on the grounds of irreversible neglect if it is evident from all the facts and circumstances that the defendant or his counsel exhibited a disregard for the judicial system and the rights of the plaintiff. In Griffey, supra, the trial court granted the plaintiff a default judgment upon his medical malpractice complaint fifty-one (51) days after the answer date when the defendant's malpractice insurance carrier failed to file an answer. The Supreme Court found no abuse of discretion in the trial court's refusal to grant the defendant Civ.R. 60(B)(1) relief. The court noted that the defendant's neglect in failing to independently determine whether an answer has been filed on his behalf may well change from "excusable to inexcusable upon the passage of time." Id., at 79.
Vantage concedes that the initial issue in this appeal is whether the Daileys demonstrated "excusable neglect" for purposes of their securing relief under Civ.R. 60(B). Vantage does not challenge that the Daileys filed their motion for relief in a timely manner or that they demonstrated to the trial court that they had a meritorious defense to the complaint.
The evidence is uncontroverted that the parties' counsel had been in contact with each other since early May 2001 and that the Daileys' counsel had made clear to Vantage's counsel that the Daileys intended to dispute any liability to Vantage and that they intended to pursue counterclaims on their own behalf against Vantage.
On June 12, 2001, Vantage's counsel, Jonathan Zweizig sent Dailey's counsel, Andrew Engel, a courtesy copy of the complaint he had filed on Vantage's behalf.
Zweizig requested that the letter serve as service upon Engel's clients and he asked Engel to call him to set up an appropriate answer date. Zweizig informed Engel that if he didn't hear from Engel in five days from the date of the letter, he would serve the Daileys by regular mail.
Zweizig acknowledged that Engel told him that no answer was filed because service had not been perfected and because the faxed complaint did not include certain exhibits. Zweizig stated he refaxed the complaint to Engel and requested Engel contact him about an appropriate answer date but heard nothing further from him before he moved for the default judgment.
There seems to have been little doubt that Vantage's counsel knew that the Daileys intended to dispute Vantage's claims against them. Although the communications by Engel with Zweizig may not have been an "appearance" for Civ.R. 55 purposes, these communications are relevant in determining whether the Daileys intended to ignore the Vantage lawsuit.
In this case, the Daileys promptly notified their counsel upon learning that they had been sued by Vantage. The default judgment was taken the day after the answer was due to be filed. The amount in controversy was substantial. Also the Daileys asserted counterclaims which were dismissed after the default judgment was entered and which may now be barred by the defense of res judicata because they are compulsory counterclaims pursuant to Civ.R. 13(A).
Taking into account these facts and circumstances and applying the principle that doubt, if any, should be resolved in favor of the motion to vacate, we conclude the trial court abused its discretion in denying the defendants' motion to vacate the default judgment. The appellants assignment of error is Sustained.
The judgment of the trial court is Reversed and Remanded for further proceedings.
WOLFF, P.J., and GRADY, J., concur.