OPINION
{¶ 1} Plaintiffs-Appellants Robert A. Pratt, administrator of the estate of David Shaffer, Sarah Shaffer and Donald Shaffer appeal from the denial of their motion for relief from a judgment rendered against them on their medical malpractice claim against defendant-appellee Dr. Mukesh Patel. Pratt contends that the trial court abused its discretion by denying the motion for relief from judgment, without a hearing. Pratt's motion for relief from judgment was predicated upon the fact that the expert witness who testified that Patel's care of the decedent did not fall below the standard of medical care testified, a few months later, in another case, that similar conduct by a physician did fall below the standard of care. Pratt characterizes the witness's testimony in the case before us as "perjury."
 {¶ 2} We agree with the trial court that the expert witness was not testifying as to facts, but was merely offering his opinion of the proper standard of medical care. We also agree with the trial court that there are differences in the fact patterns of the two cases that could be reasonably relied upon in reaching different conclusions in the two cases concerning whether the defendant in each case satisfied the standard of medical care. Accordingly, we conclude that the trial court did not abuse its discretion in denying the motion for relief from judgment, without a hearing, and the judgment of the trial court is Affirmed.
 I {¶ 3} On June 4, 1995 David Shaffer was admitted at the Wilson Memorial Hospital, complaining of nausea, vomiting and a urinary tract infection. Several hours later, Dr. Mukesh Patel, an internist, was called upon to diagnose Shaffer's condition and to take over his care. Shaffer was presenting with thrombocytopenia (low blood platelets), hematuria (blood in urine), and pancreatitis. Shaffer's platelet count was 21,000, compared to a normal platelet count from 149,000 to 250,000.
 {¶ 4} On the evening of June 4, 1995, after personally examining Shaffer, Dr. Patel concluded that the probability was that the thrombocytopenia was a drug reaction to sulfa that had been administered to Shaffer recently, although there were other possible diagnoses. Dr. Patel ordered that Shaffer be taken off of the sulfa, that he be rehydrated by means of intravenous fluids, that he be placed in the intensive care unit, and that Shaffer's vital signs be closely monitored. Dr. Patel ordered several consultations for the next morning, including a consultation with a hematologist, and left the hospital.
 {¶ 5} The next morning, Shaffer's condition was not improving. Dr. Patel immediately
 {¶ 6} consulted a hematologist, by telephone, who ordered a course of treatment including the administration of steroids. The hematologist examined Shaffer in that afternoon. Shaffer's condition continued to deteriorate, and it was decided to transport him to Good Samaritan Hospital for plasma plasmapheresis.
 {¶ 7} At 5:10 p.m. on June 6, 1995, Shaffer died, as a result of seizures and related cardiac arrest.
 {¶ 8} This action was brought against Wilson Memorial Hospital, Good Samaritan Hospital, Dr. Patel, and three other physicians, alleging medical malpractice resulting in Shaffer's death. The case was tried to a jury. Two expert witnesses testified for Pratt on the issue of the standard of care. One expert witness, Dr. Stephen Payne, testified for the defense on the issue of the standard of care.
 {¶ 9} The jury returned a verdict in favor of Patel, and judgment was rendered in his favor. The record before us does not disclose how the causes of action against the other defendants were resolved.
 {¶ 10} On May 3, 2002, almost eleven months after the judgment had been rendered in favor of Dr. Patel, Pratt filed a motion for relief from judgment, pursuant to Ohio Civ.R. 60(B)(2), (3) and (5). Pratt requested an evidentiary hearing on his motion. The trial court denied the motion, without a hearing. From the denial of the motion, Pratt appeals.
 II {¶ 11} Pratt's sole assignment of error is as follows:
 {¶ 12} "The trial court erred by denying the plaintiffs' motion for relief from judgment without holding an evidentiary hearing when the plaintiff's motion contained allegations of operative facts which would have warranted relief under Civil Rule 60(B)."
 {¶ 13} A motion for relief from judgment under Civ.R. 60(B) is confided to the sound discretion of the trial court. Griffey v. Rajan
(1987), 33 Ohio St.3d 75, 77, 514 N.E.2d 1122. Where the judgment from which relief is sought is a default judgment, so that the losing party has not had a full opportunity to litigate an issue of law or fact, Civ.R. 60(B) is to be liberally applied. Colley v. Bazell (1980),64 Ohio St.2d 243, 248-249. However, where a litigant has had an opportunity to litigate an issue of law or fact, the principle of finality of judgment takes on greater importance, so that a more conservative approach to a motion for relief from judgment is appropriate. Doe v.Trumbull County Children Services Board (1986), 28 Ohio St.3d 128, 131.
 {¶ 14} The case before us does not involve a default judgment. The judgment in Patel's favor was the result of a jury verdict following a trial, on the merits. Consequently, in the interest of upholding the finality of judgment, that judgment ought not lightly to be overturned.
 {¶ 15} Pratt predicates his motion for relief from judgment upon an allegedly inconsistent opinion that Patel's expert on the standard of care issue, Dr. Stephen Payne, gave in a later, unrelated case. Pratt consistently refers to Payne's testimony in the case before us as "perjury." In our view, this is not a proper characterization. Unlike the situation in Harre v. A.H. Robins Co. (11th Cir. 1985), 750 F.2d 1501, a case Pratt cites, in which an expert witness was found to have misstated a significant fact in his testimony, the testimony concerning which Pratt complains in the case before us is an expression of opinion. In the case before us, Dr. Payne testified that Dr. Patel was within the standard of medical care when he waited from the afternoon or evening of June 4, 1995, until approximately 9:00 the following morning before consulting a hematologist. The case in which Dr. Payne allegedly gave inconsistent testimony is Douglas v. Tobrah (2001), Logan County Common Pleas No. CV 99-05-0218. In that case, Dr. Payne gave testimony, by deposition, that the physician in that case violated the standard of medical care owed to his patient when he failed to consult a hematologist immediately.
 {¶ 16} In the case before us, Dr. Payne, besides testifying before the jury, gave a deposition that is in our record. In that deposition, Dr. Payne expressed his opinion that whether "it is incumbent upon [a] physician to obtain a consult with a specialist in blood disorders, a hematologist," "depends upon the level of suspicion and how likely you think it is that that's what's going on and how quickly you can either rule in or rule out some of the other possibilities." Dr. Payne went on to opine:
 {¶ 17} "And I think that thrombocytopenic purpura is at least on the long differential list of practically every case of thrombocytopenia that you see. You may think that you have a real good etiology for thrombocytopenia and are pursuing that, while still at the same time keeping in mind the possibility of some type of thrombocytopenic purpura.
 {¶ 18} "I think if you can establish that a patient is, in fact, responding well to your treatment that you are giving, then I don't think that you have to necessarily contain a consult or at least a staff consult.
 {¶ 19} "I think that a general internist can treat blood disorders on his or her own without having to get a specialist if the patient seems to be responding well."
 {¶ 20} In offering this opinion that the issue of whether an internist should immediately consult a hematologist depends upon facts and circumstances, Dr. Payne may be right, or he may be wrong, but that is his opinion, and it is not an inherently incredible opinion.
 {¶ 21} In the case before us, Dr. Payne testified that Dr. Patel, in his differential diagnosis, had concluded that the probability was that Shaffer's thrombocytopenia was a drug reaction to the sulfa that had been administered. Given that probability, Dr. Payne concluded that Dr. Patel was within the standard of medical care in ordering the course of treatment he did, without immediately consulting a hematologist, but that, when Shaffer's condition had not improved by the following morning, a proper standard of medical care required Dr. Patel to immediately consult a hematologist, which Dr. Patel did.
 {¶ 22} By contrast, in the other case, Douglas v. Tabrah, supra,
Dr. Payne opined that he disagreed with a differential diagnosis that the acute thrombocytopenia in that case "was probably secondary to Ticlid plus the Levenox that had been proscribed and administered to that patient." He merely considered that as one of several possibilities and would not "have elevated anything to a probability at that point." Again, that is Dr. Payne's opinion, and it may be right or wrong, but it is not inherently incredible. Dr. Payne went on to testify, in that case, that the attending physician, a Dr. Wenger, departed from the standard of medical care when, without having a "probable" diagnosis to compete with the diagnoses of renal failure, hyperglycemia, coronary artery disease, and hyponatremia, he failed to obtain an immediate consultation with a hematologist.
 {¶ 23} We agree with the trial court that in his subsequent deposition testimony in Douglas v. Tabrah, supra, Dr. Payne was expressing a different opinion, based upon different facts. These factual differences include: a difference in the platelet counts, a difference in the drugs that might have caused the thrombocytopenia, the fact that the defendant physician in the case before us, unlike the defendant physician in the other case personally examined his patient before concluding that his condition was stable and that the thrombocytopenia was "probably" the results of a reaction to the sulfa he had been administered, and the fact that Dr. Patel was an internist, while the defendant physician in the other case, who should, in Dr. Payne's opinion, have immediately consulted a hematologist, was not an internist. While the differences in the fact patterns may have been slight, they were obviously crucial to Dr. Payne's opinion.
 {¶ 24} No doubt it would have been very helpful to Pratt if he could have cross-examined Dr. Payne based on the opinion Dr. Payne expressed in the later case. If we were to hold, however, that every time an expert witness, following a judgment in favor of the party for whom the expert has testified, later gives testimony in some other case that would offer rich opportunities for cross-examination, the losing party is entitled to relief from judgment and a new trial, we would be dealing a serious blow to the principle of finality of judgments in cases involving expert testimony. It will often be possible to argue that an expert's opinion testimony in one case is inconsistent with his opinion testimony in another. Each time an expert testifies in a way that gives rise to an argument that his opinion testimony is inconsistent with his opinion testimony in earlier cases, that should not permit the judgments in those earlier cases to be set aside.
 {¶ 25} In support of his argument that he should at least have had an evidentiary hearing, Pratt points out that he filed, in support of his motion for relief from judgment, the affidavit of R. Allen Baker, M.D. We have examined that affidavit, and we conclude that it does no more than offer Dr. Baker's opinion that Dr. Payne correctly analyzed the applicable standard of medical care in Douglas v. Tabrah, supra, but incorrectly analyzed the applicable standard of care in the case before us. Perhaps Dr. Baker's opinion is correct. The jury in the case before us had conflicting opinions on the issue of this standard of medical care, and evidently chose to credit Dr. Payne's opinion.
 {¶ 26} We conclude that the trial court did not abuse its discretion in deciding that the opinion expressed by Dr. Payne in a subsequent case was neither newly discovered evidence; fraud, misrepresentation or other misconduct of an adverse party; nor any other reason justifying relief from the judgment. Accordingly, Pratt's sole assignment of error is overruled.
 III {¶ 27} Pratt's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and YOUNG, JJ., concur.