[Cite as *In re Adoption of G.G.*, 2011-Ohio-3474.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96060**

## IN RE: ADOPTION OF G.G.

## [APPEAL BY AMBER ANGELIS]

**JUDGMENT:**
**AFFIRMED**

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Probate Court Division
Case No. 09 ADP 0007027

**BEFORE:**     Cooney, J., Kilbane, A.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:**   July 14, 2011
**ATTORNEYS FOR APPELLANT**

Kimberly K. Yoder
Kimberly K. Yoder Co., LPA
1236 Smith Court
Rocky River, Ohio 44116

Victoria Nagy Smith
Victoria Nagy Smith Co., LPA
1236 Smith Court
Rocky River, Ohio 44116

**ATTORNEYS FOR APPELLEES**

**For Erin Greene, et al.**

Julia A. Cain
34 South Main Street
Rittman, Ohio 44270

**For Catholic Charities**

Lori S. Nehrer
111 Stow Avenue
Suite 100
Cuyahoga Falls, Ohio 44221

COLLEEN CONWAY COONEY, J.:

Appellant, Amber Angelis ("Angelis"), appeals the probate court's denial of her motion to vacate a final adoption decree. We find no merit to the appeal and affirm.

In September 2009, the Cuyahoga County Probate Court granted David and Erin Greene's petition to adopt a baby ("G.G."). Approximately nine months later, Angelis, G.G.'s birth mother, filed a motion to vacate the final adoption decree pursuant to Civ.R. 60(B). The probate court held a hearing on the motion, at which the following facts were presented.

In the fall of 2008, Angelis was a senior cosmetology student at an area high school. After learning she was pregnant, Angelis went to Planned Parenthood where her pregnancy was confirmed. At the time, Angelis believed she was approximately six months pregnant and estimated the child would be born sometime around February 1, 2009. Because Angelis had not decided whether she would keep the baby or choose adoption, Planned Parenthood referred her to Catholic Charities for counseling. Ellen Specht ("Specht"), a social worker at Catholic Charities, was assigned to work with Angelis.

Shortly after her second meeting with Specht, Angelis met Erin Greene ("Greene"), a teacher at her school, to whom she was assigned to give a manicure. Greene noticed Angelis had pamphlets regarding adoption in her work area, and they discussed the pregnancy and adoption plans. Greene expressed interest in adopting the baby, so Angelis gave her Specht's phone number at Catholic Charities.

The next day, Greene pulled Angelis out of a class to speak to Specht on her cell phone after Greene had contacted Specht to express her interest in adopting Angelis's baby. In response to questioning, Angelis told Specht she did not feel pressured by Greene, and Specht referred Greene to another social worker at Catholic Charities to conduct a home study. Greene contacted Angelis several times the following week before school recessed for winter break.

Angelis went into labor prematurely on December 26, 2008 and was unable to contact Specht, who was on vacation, so she contacted Greene to get the phone number of another social worker at Catholic Charities. Greene came to the hospital even though Angelis told her she did not want her to come, and the nurses refused to allow Greene into Angelis's room. Angelis could hear Greene's voice outside her hospital room, and her presence at the hospital irritated her.

Before leaving the hospital, Angelis signed a temporary surrender form allowing Catholic Charities to place her baby in foster care while she decided how she would proceed. After signing the temporary surrender, Angelis texted Greene to inform her that she was leaving the hospital, and she was annoyed to learn that Greene was once again on her way to the hospital.

Angelis testified that after a few days had passed, she texted Greene to tell Greene she could not have her baby. Nevertheless, Angelis and the baby's father accepted Greene's invitation to meet for breakfast that morning. Angelis brought a baby book with pictures of the baby including a picture of Greene and her husband named as the adoptive parents.

When school resumed on January 5, 2009, Angelis learned that Greene had circulated an email announcing that she and her husband were adopting a baby. Although Angelis was not mentioned in the email, Angelis was angered by the announcement and expressed her annoyance to Specht. Apparently, Greene was unaware that Angelis had signed only a temporary surrender and Angelis was taking more time to consider her options.

On January 8, 2009, Angelis met with Specht to discuss reasons for and against adoption. Specht explained Ohio's adoption laws and provided materials required by state law. She also presented alternatives to adoption including the granting of guardianship or custody to a friend or family member as well as the option to work through the "county system" with foster care. Angelis told Specht that if she went through with the adoption, she did not want the Greenes to adopt her baby.

On January 21, 2009, Specht called Angelis to confirm a planned visit with the baby the next day. Angelis indicated that she still wanted to meet

with Specht as scheduled and she and the baby's father wanted to sign the permanent surrender papers at that time. Consequently, Angelis and the father met with Specht and Specht's supervisor Sandy Fay ("Fay") to sign the permanent surrender papers. Specht testified that in addition to her explanations about the permanent surrender, she reminded them that once they signed the permanent surrender, they could not change their minds. Specht also testified that, upon inquiry, Angelis denied feeling pressured or coerced into signing the papers.

Angelis testified that she understood the meaning of the word "permanent," that she understood this was an adoption, and that by signing the papers she was giving Catholic Charities permanent custody of her baby. Angelis admitted that it was explained to her that she could not change her mind.

At the conclusion of the hearing, the probate court denied Angelis's motion for relief from judgment.

Angelis now appeals, raising three assignments of error that relate to the denial of her motion for relief from judgment.

Civ.R. 60(B), which governs relief from judgment, provides, in part:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons:* * * (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an

adverse party; * * * or (5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time, and for reasons (1),(2) and (3) not more than one year after the judgment, order or proceeding was taken."

To prevail on a motion for relief from judgment under Civ.R. 60(B), the movant must demonstrate that (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time. *GTE Automatic Elec., Inc. v. ARC Industries, Inc.* (1976), 47 Ohio St.2d 146, 351 N.E.2d 113, paragraph two of the syllabus. These requirements are independent and written in the conjunctive; therefore, all three must be clearly established in order to be entitled to relief. Id. at 151.

The trial court denied Angelis's motion because she failed to establish by clear and convincing evidence that she was subjected to fraud, duress, or undue influence when she made the decision to permanently surrender the custody of her child. Further, the court also stated:

"It is noteworthy that in all of the cases cited by the parties in this action, consent and/or surrender decisions were challenged by birthparents almost immediately, and well before the finalization of adoption. Although birthmother claims to have been led to believe that she had six months after the surrender to challenge the adoption, she took no action during this time. In fact, she took no action until 18 months after the surrender and nearly a year after the adoption was finalized. The Ohio Supreme Court, in *Zschach*[1], recognizes that the 'Goal of adoption statutes is to protect the

---

[1] *In re Adoption of Zschach* (1996), 75 Ohio St.3d 648, 665 N.E.2d 1070.

bests interests of children, which is best accomplished in cases where adoption is necessary by providing child with permanent and stable home and ensuring that adoption process is completed in expeditious manner.'"

Failure to file the motion in timely manner precludes relief from judgment under Civ.R. 60(B). *State ex rel. Richard v. Seidner*, 76 Ohio St.3d 149, 151, 1996-Ohio-54, 666 N.E.2d 1134. This rule strikes a balance between the need for judgments to be final and the need for courts to vacate orders when justice and fairness require. *Doddridge v. Fitzpatrick* (1978), 53 Ohio St.2d 9, 12, 371 N.E.2d 214.

Whether a Civ.R. 60(B) motion is filed within a reasonable time depends on the facts and circumstances of the particular case. *Colley v. Bazell* (1980), 64 Ohio St.2d 243, 249-250, 416 N.E.2d 605. The movant bears the burden of submitting factual material that demonstrates the timeliness of the motion. *Adomeit v. Baltimore* (1974), 39 Ohio App.2d 97, 103, 316 N.E.2d 469. When a movant is aware that there are grounds for relief and delays filing the motion, the movant must provide a reasonable explanation for the delay. *Kaczur v. Decara*, Cuyahoga App. No. 67546, 1995-Ohio-3038 (Civ.R. 60(B) motion untimely filed when movant offered no reasonable explanation for a nine-month delay in filing the motion); *Sec. Fed. Sav. & Loan Assn. of Cleveland v. Keyes* (June 29, 1990), Geauga App. No. 89-G1524 (holding that failure to explain an 18-week delay in filing a motion to vacate the default judgment was untimely). **In the absence of any evidence explaining the delay, the movant has failed to demonstrate the timeliness of the motion.**

*Mt. Olive Baptist Church v. Pipkins Paints & Home Improvement Ctr., Inc.* (1979), 64 Ohio App.2d 285, 413 N.E.2d 850, paragraph two of the syllabus. The trial court's decision to grant or deny relief from judgment under Civ.R. 60(B) will not be disturbed absent an abuse of discretion. *Griffey v. Rajan* (1987), 33 Ohio St.3d 75, 77, 514 N.E.2d 1122.

Angelis failed to present any evidence to justify her delay in seeking relief from judgment. Although she argues in her third assignment of error that the trial court erred in finding that she took no action to contest the adoption, we find no evidence in the record to support her claim. Angelis executed the permanent surrender, which she now claims was the product of fraud and undue influence, on January 22, 2009. The Greenes filed their petition to adopt G.G. on August 25, 2009, which the court granted on September 30, 2009. Angelis did not file her motion for relief from judgment until July 9, 2010, approximately 18 months after she signed the permanent surrender form and over nine months after the court granted the Greenes' adoption petition.

There is no evidence or argument explaining why Angelis delayed seeking relief under Civ.R. 60(B). Angelis admitted during the hearing that she knew that by signing the permanent surrender form, she gave permanent custody of her baby to Catholic Charities, which in turn, would give the baby to the Greenes for adoption. She also knew the adoption would not be finalized until six months after the permanent surrender was executed. She met

with Specht on three separate occasions after signing the permanent surrender during which she expressed regret for having permanently surrendered her baby for adoption.

Despite knowing all of these facts, Angelis made no effort to have the permanent surrender declared invalid prior to the adoption being finalized. She also provided no explanation as to why she waited over nine months after the adoption was finalized to attempt to have the adoption decree vacated. Having failed to provide a reasonable explanation for the delay, we find the three-prong test set forth in *GTE* for obtaining relief from judgment was not met, and the trial court properly denied the motion.

Accordingly, we overrule all three assignments of error.

Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, probate division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

COLLEEN CONWAY COONEY, JUDGE

PATRICIA ANN BLACKMON, J., CONCURS;

MARY EILEEN KILBANE, A.J., CONCURS IN JUDGMENT ONLY