[Cite as *Lumber Yard, Inc. v. Lasure*, 2014-Ohio-4556.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| LUMBER YARD, INC. | JUDGES: |
| | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. W. Scott Gwin, J. |
| | Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 14-CA-14 |
| KENNETH D. LASURE, ET AL. | |
| Defendants/Third-Party Plaintiffs-Appellants | O P I N I O N |
| -vs- | |
| ABLE BUILDING SERVICE, INC., | |
| Third-Party Defendant-Appellee | |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Licking County Court of Common Pleas, Case No. 11 CV 00433 |
| JUDGMENT: | Reversed |
| DATE OF JUDGMENT ENTRY: | October 10, 2014 |

APPEARANCES:

| | |
|---|---|
| For Third-Party Defendant-Appellee | For Defendants/Third-Party Plaintiffs-Appellants |
| DANIEL O. BARHAM Barham Legal, LLC 2670 N. Columbus St., Ste F Lancaster, Ohio 43130 | DAVE LACKEY Scherner & Sybert LLC 153 S. Liberty St. Powell, Ohio 43065 |

*Hoffman, P.J.*

{¶1} Defendants/Third-Party Plaintiffs-Appellants Kenneth D. Lasure and Debra L. Lasure appeal the February 26, 2014 Judgment Entry entered by the Licking County Court of Common Pleas granting the motion for relief from judgment in favor of Third-Party Defendant-Appellee Able Building Service, Inc.

STATEMENT OF THE CASE[1]

{¶2} On March 28, 2011, the Lumber Yard, Inc. filed a complaint seeking foreclosure of its affidavit for mechanics' lien. Appellants, Kenneth D. and Debra L. Lasure filed an answer, counterclaim, cross-claim, and third-party complaint. The cross-claim asserted a cause of action against Able Building Service, Inc. The third-party complaint added a cause of action as to Jed Dawson, individually. Jed Dawson and his wife, Judith Dawson, are each fifty-percent shareholders in Able Building Service, Inc. Judith Dawson is an officer of Able Building Service, and was authorized to handle all of Able Business Service's business affairs.

{¶3} On June 8, 2012, Appellants Kenneth and Debra Lasure filed a motion for partial summary judgment as to their claims against Able Building Service, Inc. and Jed Dawson, Individually. On September 4, 2012, Lumber Yard dismissed its complaint after voluntarily releasing its mechanic's lien.

{¶4} The trial court scheduled the remaining claims between Able Building Service, Inc., Dawson, and Appellants for trial on February 26, 2013.

---

[1] A full rendition of the underlying facts is unnecessary for our resolution of the appeal.

**{¶5}** Via Judgment Entry of January 22, 2013, the trial court granted counsel of record for Able Building Service, Inc. and Dawson the opportunity to withdraw as counsel.

**{¶6}** A bench trial was conducted on February 26, 2013, and Able Building Service, Inc. and Jed Dawson appeared without representation of legal counsel.

**{¶7}** Via Judgment Entry of March 14, 2013, the trial court awarded judgment in favor of Appellants, including findings of fact and conclusions of law. The trial court found Able Building Service, Inc. in default for failure to appear at trial with legal counsel. The trial court further awarded judgment in favor of Appellants against Jed Dawson, individually.

**{¶8}** On October 15, 2013, Able Building Service, Inc. moved for relief from judgment, pursuant to Civil Rule 60(B). On the same date, Jed Dawson also moved for relief from judgment pursuant to Civil Rule 60(B). Appellants filed a memorandum contra. The trial court scheduled the matter for hearing on January 24, 2014.

**{¶9}** Jed Dawson transferred all of his shares in Able Business Service, Inc. to Judith Dawson. On December 13, 2013, Jed Dawson withdrew his motion for relief from judgment.

**{¶10}** Via Judgment Entry of February 26, 2014, the trial court granted Able Building Service's motion for relief from judgment.

**{¶11}** Appellants now appeal, assigning as error:

**{¶12}** "I. THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING ABLE'S MOTION FOR RELIEF FROM JUDGMENT."

I

{¶13} In *Fifth Third Bank v. Labate,* Stark App. 2005CA00180, 2006-Ohio-4239, this Court held,

{¶14} "Civil Rule 60(B) represents an attempt to 'strike a proper balance between the conflicting principles that litigation must be brought to an end and justice should be done.' *Colley v. Bazell* (1980), 64 Ohio St.2d 243, 248, 416 N.E.2d 605 (Citation omitted). The grant or denial of a motion for relief from judgment under Civ.R. 60(B) rests within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *Griffey v. Rajan* (1987), 33 Ohio St.3d 75, 77, 514 N.E.2d 1122. An abuse of discretion connotes more than an error of law or judgment; it implies the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. Further, in examining the trial court's denial of a motion for relief from judgment this Court does not review the correctness of the original judgment from which relief is sought, but rather we are limited to determining whether the trial court abused its discretion in failing to grant relief from judgment. *Kochalko v. Kochalko,* Guernsey App. No. 04CA15, 2004-Ohio-7098 (Citations omitted).

{¶15} "In order to prevail on a motion brought pursuant to Civ.R. 60(B), ' * * * the movant must demonstrate that (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceedings was entered or taken.' *Argo Plastic*

*Products Co. v. Cleveland* (1984), 15 Ohio St.3d 389, 391, 474 N.E.2d 328, citing *GTE Automatic Electric v. ARC Industries* (1976), 47 Ohio St.2d 146, 351 N.E.2d 113, paragraph two of the syllabus. If any prong of this requirement is not satisfied, relief shall be denied. *Argo* at 391, 474 N.E.2d 328."

**{¶16}** At the hearing on Able's motion for relief from judgment, Jed Dawson testified,

**{¶17}** "Q. So when did you become aware that your counsel had withdrawn?

**{¶18}** "A. It would have been sometime shortly after this date; probably late - - late in January I'm guessing.

**{¶19}** "Q. Okay.  And what was your understanding that that meant?

**{¶20}** "A. That they were basically done providing any service to me.

**{¶21}** "Q. What about Able?

**{¶22}** "A. The same.

**{¶23}** "Q. So what did you do after that?

**{¶24}** "A. Just waited for the date to come to court.

**{¶25}** "Q. Did you seek out any other counsel?

**{¶26}** "A. No sir.

**{¶27}** "Q. Did you advise Mrs. Dawson of the situation?

**{¶28}** "A. No, I did not.

**{¶29}** "Q. Did you check to see whether you could represent Able?

**{¶30}** "A. No.  No, I didn't even know there was - - that I couldn't legally.

**{¶31}** "* * *

**{¶32}** "Q. All right. We'll pick up where we left off. I don't recall if I asked this question. I'll just go ahead and ask you. To your knowledge, when did Judith Dawson become aware of these - - these letters that we've just discussed, 3, 4, 5, and 6?

**{¶33}** "A. Not until late August.

**{¶34}** "Q. Okay. What were the circumstances in late August where she became aware of it?

**{¶35}** "A. The - - the findings from the Court, and I - - I told her all the - - kind of laid everything out and told her what was going on, what had happened, and revealed all that to her in late August.

**{¶36}** "Q. Is it your testimony there'd been no other discussions about - -

**{¶37}** "A. Correct.

**{¶38}** "Q. No other discussions about the case with Judith Dawson until that point?

**{¶39}** "A. Correct.

**{¶40}** "Q. Why not?

**{¶41}** "A. It's hard to say. I thought - - I thought that if I came in and told my side of the story to the Judge, and you know, that things would be, you know, he would hear and, you know, things would come out in a good way, and that she didn't - - she just didn't need to know and be concerned. She gets very upset about things that are out of control and her control. I - - I don't know why not.

**{¶42}** "Q. How long have you been married to Mrs. Dawson?

**{¶43}** "A. Thirty-four years.

**{¶44}** "Q. Based on what you know and your time together and what you know of Mrs. Dawson, what do you think her reaction would have been if she had been made aware of this matter prior to trial?

**{¶45}** "MR. LACKEY: Objection.

**{¶46}** "THE COURT: Response?

**{¶47}** "MR. BARHAM: Based on his knowledge of being married to the woman for 34 years. He's observed her for that long, and I'll ask what he thinks her reaction would have been.

**{¶48}** "MR. LACKEY: It's speculative at this point for him to guess what her reaction would have been. She can testify later what her reaction might have been.

**{¶49}** "THE COURT: Isn't it speculation for it - - to ask it?

**{¶50}** "THE BARHAM: I think it goes to his motivation for - - to concealing it and what he - - and also goes to his active concealment of it being a breach of his fiduciary duty.

**{¶51}** "THE COURT: Okay. I'm going to allow it. Over-ruled.

**{¶52}** "A. I - - I think that she would have been thorough in preparation for the trial; made sure that I would have come in with an attorney. If indeed I wasn't allowed to, I think she would have found out the things that I - - the answers that I didn't have, she would have tried to find those out before the trial.

**{¶53}** "Q. How did any concerns for your marriage figure into your decision to either conceal or not - - or eventually tell her?

**{¶54}** "A. Well, it's definitely been difficult on our marriage that the whole - - the whole case, the problems, and the case, and then the subsequent judgment has been extremely difficult.  Does that answer your question?

**{¶55}** "Q. Not really, but I think that's fine.  After you finally told Mrs. Dawson, how did she react?

**{¶56}** "A. We went and hired a new attorney.

**{¶57}** "Q. Did she do anything else?

**{¶58}** "A. Well, there was, you know, the - - the moments of upset and unbelief and, you know, why - - why wouldn't - - why wouldn't you, that kind of thing.

**{¶59}** Tr. at 20-21; 29-32

**{¶60}** The testimony evidences Jed Dawson's assumption he could represent both himself and the corporation at trial, and hope the trial court "would see his side of the story." His intention was to testify on behalf of himself and Able Building Service, Inc. and he did not intend to present expert witnesses.

**{¶61}** Judith Dawson testified at the time of the trial, she was an equal shareholder in Able Building Service, Inc. and an officer of the company. She stated her title is Secretary of the corporation. Tr. at 43.

**{¶62}** Judith Dawson testified she first learned of the judgment in August of 2013. Tr. at 44. She further testified,

**{¶63}** "Q. Before suit was filed, were you aware that a dispute had arisen with the Lasures?

**{¶64}** "A. I knew that Jed - - I knew that they owed him money and that he and the Lumber Yard were trying to collect, and I knew that there had been a countersuit in

terms of, you know, that's - - that's what you expect. When you sue somebody, they sue you, and that's about the extent of what I knew was going on.

**{¶65}** "Q. When did you know that?

**{¶66}** "A. Once he walked off the job. Once he was no longer working in Licking County, I knew why. I knew that he was - - and so that's when I would have known. That was why we weren't finishing that house.

**{¶67}** "Q. You knew at that point there was a dispute. When did you know about the suit being filed and the countersuit?

**{¶68}** "A. I don't know.

**{¶69}** "Q. Were you - -

**{¶70}** "A. You know, honestly I don't know that he - - I don't know that Jed ever said to me. I think - - I think I know that much about when someone's - - when you sue somebody.

**{¶71}** "Q. Okay. Were you aware that Jed walked off the job after the Lasures had simply asked him to correct some of the past mistakes before they issued further draws?

**{¶72}** "A. Let me think back. I - - I - - Jed was very distressed. He found - - I know he had a lot of difficulty working for these particular clients. There was a lot tension on the job, a lot of inability to communicate. I'm recalling, and I think at some point, I remember him just saying, 'I - - I just - - I can't go on. I just can't. I can't continue,' and so - - yeah, he didn't.

**{¶73}** "Q. Were you aware that he filed a mechanics' lien? And I'm asking your awareness at that time, prior to the suit, but were you aware?

**{¶74}** "A. I don't know that I would have known to call it that.  I knew they owed us money.  I knew that part of what they owed us the company needed to pay to the Lumber Yard, and I thought that that first contacting the lawyer was sort of a joint, you know, we - - we couldn't just take our losses and - -- and stop because we owed the Lumber yard for materials in their home."

**{¶75}** Tr. at 53-55.

**{¶76}** Ohio law clearly sets forth ignorance of the law is not an excuse for civil litigants.  *Kier v. Kier*, 2007-Ohio-4190. Failure to properly defend an action because of a failure to understand the law cannot serve as justification for relief from judgment under Civil Rule 60(B).  *National City Bank v. Poling*, 2005-Ohio-585.

**{¶77}** Here, Jed Dawson's mistaken belief the trial court would look past his inability to represent Able Business Service, Inc. at trial cannot serve as justification for relief from judgment under Civil Rule 60(B).  In addition, Judith Dawson testified she was aware of a dispute between the Lasures and the corporation and the commencement of litigation as soon as Jed Dawson walked off the job.  She knew of a dispute between the corporation and Appellants.  She knew a lawyer had been retained.  Therefore, Jed and Judith Dawson, as fifty-percent shareholders of Able Building Service, Inc., knew of the lawsuit.  While Jed Dawson may have breached his fiduciary duty to the corporation and its other shareholder, his alleged breach does not provide grounds to vacate Appellants' judgment against Appellee.

{¶78} Appellants' sole assignment of error is sustained, and the February 26, 2014 Judgment Entry of the Licking County Court of Common Pleas is reversed.

By: Hoffman, P.J.

Gwin, J. and

Wise, J. concur